1  Jordan T. Smith, Esq., Bar No. 12097
   JTS@pisanellibice.com
2  Brianna Smith, Esq., Bar No. 11795
   BGS@pisanellibice.com
3  PISANELLI BICE PLLC
   400 South 7th Street, Suite 300
4  Las Vegas, Nevada 89101
   Telephone:  702.214.2100
5
   *Attorneys for Plaintiffs*
6
7                    **UNITED STATES DISTRICT COURT**

8                         **DISTRICT OF NEVADA**

9  DAISEY TRUST, by and through its trustee,        Case No.:
   Eddie Haddad,
10
                         Plaintiff,
11 v.                                               **COMPLAINT**

12 FEDERAL HOUSING FINANCE AGENCY;
   SANDRA L. THOMPSON, in her official
13 capacity as the Director of the Federal Housing
   Finance Agency,
14
                         Defendants.
15

16                    __NATURE OF THE CASE__

17       1.      Article I of the Constitution states, "No Money shall be drawn from the Treasury,

18 but in Consequence of Appropriations made by Law[.]" But, in 2008, Congress created the

19 Federal Housing Finance Agency ("FHFA") as an "independent" agency that is wholly outside the

20 constitutional appropriations process. Rather than receive funding through bills enacted by

21 Congress and signed by the President, FHFA is self-financed through assessments collected from

22 the entities it regulates.  Thus, FHFA generates its own slush fund out of which it unilaterally sets

23 its own budget and spends money without any congressional oversight, including funding its

24 operations like the foreclosure of Plaintiff's property. FHFA's structure violates the plain text,

25 framework, and history of the Appropriations Clause and its underlying separation-of-powers

26 principles that date back to the Founding. Indeed, the United States Supreme Court currently has

27 pending before it a similar question regarding the constitutionality of another federal agency (the

28

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

CFPB) that funds itself outside the normal appropriations process. *See CFPB v. CFSA*, No. 22-448 (cert. granted Feb. 27, 2023).

Therefore, FHFA's self-funding structure must be declared unconstitutional and all unconstitutional actions that flow from it – including the pending foreclosure sale – must be declared unlawful, set aside, and enjoined. At minimum, the Court should enjoin the pending foreclosure until the Supreme Court provides guidance on this question.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the United States Constitution.

3.      The Court is authorized to award the requested relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202.

4.      Venue is proper in the District of Nevada under 28 U.S.C. § 1391(e) because the Defendants are an officer and agency of the United States and a substantial part of the events giving rise to the claim occurred here plus a substantial part of the property that is the subject of the action is situated in this judicial district.

## THE PARTIES

5.      Plaintiff Daisey Trust, by and through its trustee Eddie Haddad, is a Nevada trust that owns the real property in Clark County, Nevada commonly referred to as 33 Newburg Avenue, North Las Vegas, Nevada 89032 APN No. 139-03-710-054.

6.      Defendant Federal Housing Finance Agency is an "independent agency" of the United States that, among other things, regulates the Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporate ("Freddie Mac"). *See* 12 U.S.C. § 4511. FHFA is named as a defendant directly as well as in its capacities as regulator and conservator of Fannie Mae and Freddie Mac.

7.      Defendant Sandra L. Thompson, in her official capacity, is the Director of the Federal Housing Finance Agency and is responsible for implementing and overseeing its

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

operations. *See* 12 U.S.C. § 4513. She is subject to suit in her official capacity. *See* 12 U.S.C. § 4513(c)(2).

### COMMON ALLEGATIONS

**A.**     **Congress Unconstitutionally Structures the Federal Housing Finance Agency.**

8.     Plaintiff repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

9.     In 2008, Congress passed, and President Bush signed, the Housing and Economic Recovery Act (HERA), the statute which created the FHFA. The 2008 Congress created FHFA as an "independent agency" charged with regulating the federal housing mortgage market, including Fannie Mae and Freddie Mac. *Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021) (quoting 12 U.S.C. § 4511).

10.     Fannie Mae and Freddie Mac are for-profit stockholder owned corporations organized and existing under the Federal Home Loan Corporation Act. Fannie Mae and Freddie Mac buy and sell mortgages, often pooling them into mortgage-backed securities for investors.

11.     In its effort to make FHFA an "independent agency," Congress gave FHFA sweeping powers and largely insulated FHFA from democratic accountability. Congress attempted to achieve this goal in two ways. First, it insulated the FHFA Director from presidential removal. And second, it granted FHFA budgetary independence.

12.     The Supreme Court has already rejected the first aspect of the 2008 Congress's attempts to insulate FHFA from democratic accountability. In *Collins*, the Supreme Court held that HERA's prohibition on the President firing the FHFA director at will violates the separation of powers and is unconstitutional. 141 S. Ct. at 1783.

13.     FHFA's funding and budgetary structure also violates the Constitution. Article I of the Constitution states "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. CONST. art. I, § 9, cl. 7. But, as the Supreme Court recognized, "FHFA is not funded through the ordinary appropriations process." *Collins*,

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

141 S. Ct. at 1772. Rather, FHFA is free to determine its own budget with no oversight from Congress. *Id.*

14. FHFA's own statements and reports admit the constitutional violation. For example, its FY2022 Performance and Accountability Report states "FHFA is financed through revenue from assessments and is considered a non-appropriated entity (FHFA does not receive any appropriated funds from Congress)."

15. Not only that—FHFA may itself collect on the budget it determines to be appropriate for itself. Indeed, HERA grants the FHFA Director full control over FHFA's funding outside of the typical appropriations process. 12 U.S.C. § 4516. Instead of funding through bicameral passage and presentment of appropriations bills as the Appropriations Clause requires, the FHFA Director may establish and collect assessments, in an amount to be determined by the Director, directly from the entities that FHFA regulates – Fannie Mae, Freddie Mac, and the Federal Home Loan Banks. *Id.* § 4516(a).

16. The only restraint on FHFA's funding power is the Director's unbounded judgment of what is "reasonable," *see id.* "Reasonable" here is a blank check for FHFA to collect *unlimited* funds. HERA also specifies that "[t]he amounts received by [FHFA] from any assessment under this section shall not be construed to be Government or public funds or appropriated money." *Id.* § 4516(f)(2). The Director has sole discretion to decide how to use the assessed funds for compensation and "all other expenses of the Director and the Agency." *Id.* § 4516(f)(4). Congress provided no guidelines, boundaries, or intelligible principles to cabin the Director.

17. In practical terms, this authority amounts to an unconstrained power to collect and spend money, for FHFA regulates entities that have *over $8 trillion* of assets from which it may freely draw. See Statement of Sandra L. Thompson, FHFA Director, Before the House Comm. On Fin. Servs. (July 20, 2022), https://bit.ly/3AnDFVq (last visited June 23, 2023) [hereinafter Statement of Thompson]. The Director may use these funds not only for FHFA's expenses but also "to maintain a working capital fund." 12 U.S.C. § 4516(a)(3). The Director alone determines the amount of those assessments. *Id.*

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

4

18. In September 2008, pursuant to HERA, FHFA's then-Director placed Fannie Mae and Freddie Mac into a conservatorship.

19. Once placed in conservatorship, FHFA immediately succeeded to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A)(i). FHFA may "take over the assets of and operate," "collect all money due [to]," "perform all function of," "preserve and conserve the assets and property of" and contract on behalf of Fannie Mae and Freddie Mac. 12 U.S.C. § 4617(b)(2)(B); *see id*. § 4617(b)(2)(C)-(E), (J).

20. Also as conservator, FHFA "may transfer or sell any asset or liability of the regulated entity in default, and may do so without any approval, assignment, or consent with respect to such transfer or sale." 12 U.S.C. § 4617(b)(2)(G).

21. As conservator for Fannie Mae and Freddie Mac, FHFA is a designated Federal Property Manager ("FPM"). 12 U.S.C. § 5220(a)(1)(A). As a federal property manager, FHFA must oversee foreclosures, including with its servicers. *See id*. § 5220(b)(1); *see also id*. § 5220(c). FHFA must submit periodic reports about the number of foreclosures that occur. *Id*. 5220(b)(5).

22. Thus, FHFA directly and indirectly, through Fannie Mae, Freddie Mac, their servicers, and others, controls, directs, supervises, participates in and/or funds the foreclosure of delinquent loans and mortgages.

23. For example, in just the first two months of 2023, through the entities that it manages and regulates, FHFA oversaw and controlled more than 3,000 foreclosure sales and 13,000 foreclosure starts.

24. FHFA's operations – including the foreclosures of properties through Fannie Mae, Freddie Mac, their servicers, and others – are unconstitutionally funded.

**B.    Plaintiff Purchases the Property.**

25. Plaintiff repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

5

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

26. A deed of trust between nonparty borrowers and Countrywide Home Loans, Inc. ("the Lender") was recorded on January 3, 2007, granting the Lender a security interest in the real property known as 33 Newburg Avenue, North Las Vegas, Nevada 89032 ("the Property") to secure the repayment of $198,500.00. The Deed of Trust also listed Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and Reconstruct Company, N.A. as the trustee.

27. Fannie Mae purchased the loan in January 2007.

28. On May 26, 2010 MERS, as nominee for Lender and the Lender's successors, assigned the Deed of Trust to BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing LP. The assignment of the Deed of Trust was recorded on April 1, 2010.

29. Bank of America was successor to BAC Home Loans Servicing, LP. Bank of America became the servicer of the loan for Fannie Mae.

30. On September 2, 2011, Nevada Association Services, Inc. (the HOA Trustee), as agent for the Village at Craig Ranch (HOA), recorded a Notice of Delinquent Assessment Lien.

31. On November 2, 2011, the HOA Trustee, as agent for the HOA, recorded a Notice of Default and Election to Sell.

32. On or about March 27, 2012, the HOA Trustee, on behalf of the HOA, recorded a Notice of Foreclosure Sale.

33. On August 24, 2012, Plaintiff purchased the Property at the foreclosure sale.

34. On August 30, 2012, the HOA, through the HOA Trustee, recorded a foreclosure deed memorializing Plaintiff's purchase.

35. Plaintiff has property rights and interests in the Property, including possessory and occupancy rights.

**C.    FHFA is Directing the Foreclosure on Plaintiff's Property without Constitutionally Appropriated Funds.**

36. Notwithstanding Plaintiff's purchase of the Property at the foreclosure sale, Bank of America assigned the original deed of trust to Green Tree Servicing, LLC ("Green Tree") on or around June 12, 2013. The assignment was recorded on July 1, 2013.

37.     State court litigation ensued between Plaintiff, Green Tree, the original borrowers, and entities related to the HOA. FHFA was not involved. That litigation concluded in 2019.

38.     On or about October 3, 2019, Ditech Financial LLC ("Ditech") fka Green Tree substituted Barrett Daffin Frappier, Treder & Weiss as trustee.

39.     On or about February 3, 2020, Ditech assigned the original deed of trust to New Residential Mortgage LLC.

40.     Later the same year, the original deed of trust was assigned again to NewRez LLC dba Shellpoint Mortgage Servicing ("NewRez").

41.     In September 2021, NewRez substituted National Default Servicing Corporation ("NDSC") as Trustee under the original deed of trust.

42.     On April 6, 2023, NDSC, on behalf of NewRez, filed a Notice of Default and Election to Sell Under Deed of Trust.  This notice threatens a foreclosure on Plaintiff's Property.

43.     FHFA is directly and/or indirectly (through Fannie Mae, servicers, and otherwise), controlling, supervising, managing, funding, and/or participating in the foreclosure on Plaintiff's Property without a constitutional appropriation from Congress. The foreclosure sale is therefore unlawful, unconstitutional, and should be set aside and enjoined.

44.     If the foreclosure proceeds, due to the unique and irreplaceable nature of land and real estate, Plaintiff will lose valuable property rights and suffer irreparable harm.

**FIRST CLAIM FOR RELIEF**
**Violation of the Appropriations Clause of the United States Constitution.**

45.     Plaintiff repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

46.     The Supreme Court has recognized a cause of action for equitable relief to redress constitutional violations by federal officials, particularly those that violate separation of powers principles. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

47.     Additionally, the Administrative Procedure Act requires the Court to hold unlawful and set aside any agency action that is "contrary to constitutional right, power, privilege, or immunity"  or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

law." 5 U.S.C. § 706(2)(A)-(B). Similarly, the Declaratory Judgments Act empowers the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

48.   FHFA is an agency of the United States.

49.   Article I, Section 9, Clause 7 of the United States Constitution provides, "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" The power of the purse belongs solely to Congress. *See* U.S. CONST. art. I, § 1 ("[a]ll legislative Powers herein granted shall be vested in a Congress of the United States.").

50.   Contrary to this constitutional command, HERA and 12 U.S.C. § 4516 provide that the FHFA shall be funded through assessments from the entities that it regulates rather than from an appropriation passed by Congress and signed by the President.

51.   FHFA's Director unilaterally sets the amount of assessments and establishes its own budget without congressional oversight or any democratic accountability.

52.   The Supreme Court has recognized that "FHFA is not funded through the ordinary appropriations process." *Collins*, 141 S. Ct. at 1772.

53.   FHFA openly admits that it is a so-called non-appropriated entity and does not receive any appropriated funds from Congress.

54.   FHFA's unilateral self-funding initiative is a permanent power and is not temporally limited as it should be.

55.   The 2008 Congress that enacted HERA cannot purport to tie the hands of all future Congresses to exercise oversight over the FHFA. Congress cannot simply delegate or cede the power to budget, raise, appropriate, or spend money entirely to an executive agency.

56.   Accordingly, FHFA's self-funding structure cannot be reconciled with the text, structure, and history of the Appropriations Clause or the Supreme Court's separation-of-powers precedent, including the Nondelegation Doctrine.

57.   HERA and, specifically, 12 U.S.C. § 4516 violate the Appropriations Clause, the Separation of Powers, and/or the Nondelegation Doctrine by allowing FHFA to self-fund and unilaterally spend public money without an appropriation from Congress. As a result,

12 U.S.C. § 4516 and related portions of HERA must be declared unconstitutional and unlawful. *See also* 12 U.S.C. § 4516(f)(2).

58.    All FHFA actions taken without a constitutional appropriation from Congress are void, unlawful, and must be set aside.

59.    FHFA's efforts to control, manage, supervise, direct, and/or fund the foreclosure on Plaintiff's Property are unconstitutionally funded and without a constitutional appropriation. Therefore, the foreclosure action constitutes unconstitutional agency action and it is void, unlawful, and must be set aside.

60.    As described above, FHFA's directing, supervising, controlling, managing, funding, and/or otherwise participating in the foreclosure action against Plaintiff without a proper appropriation violates the Appropriations Clause, Separation of Powers, and the Nondelegation Doctrine. The FHFA's action – and all those that are caused by and flow from it – must be declared unlawful, enjoined, and set aside.

WHEREFORE, Plaintiff prays for the following relief against FHFA, its officers, agents, servants, employees, attorneys, and all other persons who are in active convert or participation with them:

1.    A temporary, preliminary, and permanent injunction enjoining FHFA from expending any monies to direct, supervise, control, manage, fund, or otherwise participate, directly or indirectly, in the foreclosure on Plaintiff's Property;

2.    A temporary, preliminary, and permanent injunction enjoining all foreclosure related actions against Plaintiff's Property that are caused by, or flow from, FHFA's violation of the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine;

3.    An order setting aside any action as described herein that facilitates the foreclosure on Plaintiff's Property in violation of the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine;

4.    A declaratory judgment that 12 U.S.C. § 4516 violates the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine, and is unconstitutional;

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

5.     A declaratory judgment that FHFA's direct and indirect foreclosure related actions as described herein are unconstitutionally funded or paid for in violation of the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine;

6.     A declaratory judgment that FHFA's structure violates the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine and declaring void the provisions of HERA that purport to fund FHFA by assessments on regulated entities, including entities currently under FHFA's conservatorship;

7.     A declaratory judgment that the FHFA's direct and indirect foreclosure related actions as described herein are "contrary to constitutional right, power, privilege, or immunity" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(B).

8.     All other relief to which the Plaintiff may show itself to be entitled.

9.     The foregoing relief should be granted to Plaintiff, individually, and as to similarly situated non-parties on a nationwide basis.

DATED this 23rd day of June, 2023.

PISANELLI BICE PLLC

By:   */s/ Jordan T. Smith*
        Jordan T. Smith, Esq., Bar No. 12097
        Brianna Smith, Esq., Bar No. 11795
        400 South 7th Street, Suite 300
        Las Vegas, Nevada 89101

*Attorneys for Plaintiff*