Jordan T. Smith, Esq., Bar No. 12097
JTS@pisanellibice.com
Brianna Smith, Esq., Bar No. 11795
BGS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone:  702.214.2100

*Attorneys for Plaintiffs and Proposed Classes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAISEY TRUST, by and through its trustee, Eddie Haddad; CAPE JASMINE CT. TRUST, by and through its trustee, Eddie Haddad; and SATICOY BAY LLC, SERIES 10007 LIBERTY VIEW<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY; SANDRA L. THOMPSON, in her official capacity as the Director of the Federal Housing Finance Agency,<br><br>Defendants. | Case No.: 2:23-CV-00978-APG-EJY<br><br>**FIRST AMENDED COMPLAINT (CLASS ACTION)**<br><br>**JURY DEMAND** |

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## <u>INTRODUCTION AND NATURE OF THE CASE</u>

1.     The  separation  of  powers  is  the  fundamental  animating  principle  of  the Constitution. It is inherent in the Constitution's text, structure, and history as a protection of individual liberty and as a safeguard against tyranny. One feature of the separation of powers is found in the Appropriations Clause of Article I, Section 9, Clause 7.  The Appropriations Clause provides  that  "No  Money  shall  be  drawn  from  the  Treasury,  but  in  Consequence  of Appropriations made by Law[.]" This Clause separates the power of the purse from the power of the sword. It mandates that all federal agencies must be funded only with specific, time-limited appropriations from Congress, and it prohibits federal agencies from spending any funds that have not been authorized by both houses of Congress and signed by the President.

2.      But, in 2008, Congress created the Federal Housing Finance Agency ("FHFA") as an "independent" agency that is wholly outside the constitutional appropriations process. Rather than receive funding through bills enacted by Congress and signed by the President, FHFA is self-financed through assessments collected from the entities it regulates. FHFA unilaterally sets its own budget and spending priorities without any congressional oversight. Unlike other federal agencies, FHFA has no limits on the amounts it can raise from its regulated entities. Equally bad, Congress has not set forth any intelligible principles to constrain FHFA's discretion to demand or spend unlimited amounts from its regulated entities. The lack of any congressionally imposed limits on FHFA's self-generated funding and spending violates another fundamental separation of powers principle—the non-delegation doctrine.

3.      From its own unaccountable slush fund, FHFA directs and controls the foreclosure operations that threaten—and have inflicted—irreparable harm on the three Plaintiff classes described below. Therefore, FHFA's self-funding structure must be declared unconstitutional and all unconstitutional actions that flow from it must be declared unlawful, set aside, and enjoined. FHFA must also pay compensation for the constitutional violations and the wrongful foreclosures that have already been effectuated without a constitutional funding source.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the United States Constitution.

5.      The Court is authorized to award the requested relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202.

6.      The Court is authorized to award the requested relief directly under the United States Constitution and/or under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

7.      Venue is proper in the District of Nevada under 28 U.S.C. § 1391(e) because the Defendants are an officer and agency of the United States and a substantial part of the events

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

giving rise to the claim occurred here plus a substantial part of the properties that are the subject of the action are situated in this judicial district.

8.  Divisional venue is proper under LR IA 1-8(a) in the Unofficial Southern Division of the District, because that is the Division in which the action arose.

## THE PARTIES

9.  Representative Plaintiff Cape Jasmine Ct. Trust by and through its trustee, Eddie Haddad ("Cape Jasmine"), is a Nevada entity that owns the real property in Clark County, Nevada commonly referred to as 167 Desert Pond Avenue, Henderson, NV 89015, APN No. 179-31-710-050.

10.  Representative Plaintiff Daisey Trust, by and through its trustee Eddie Haddad ("Daisey Trust"), is a Nevada trust that owns the real property in Clark County, Nevada commonly referred to as 33 Newburg Avenue, North Las Vegas, Nevada 89032, APN No. 139-03-710-054.

11.  Representative Plaintiff Saticoy Bay LLC, Series 10007 Liberty View ("Saticoy Bay") is a Nevada entity that owns the real property in Clark County, Nevada commonly referred to as 10007 Liberty View Rd., Las Vegas, Nevada 89148, APN No. 163-31-213-072.

12.  Defendant Federal Housing Finance Agency is an "independent agency" of the United States that, among other things, regulates the Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporate ("Freddie Mac"). *See* 12 U.S.C. § 4511. FHFA is named as a defendant directly as well as in its capacities as regulator and conservator of Fannie Mae and Freddie Mac.

13.  Defendant Sandra L. Thompson, in her official capacity, is the Director of the Federal Housing Finance Agency and is responsible for implementing and overseeing its operations. *See* 12 U.S.C. § 4513. She is subject to suit in her official capacity. *See* 12 U.S.C. § 4513(c)(2); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

….

….

3

## CLASS ALLEGATIONS

14.    **Definition of Classes.** Plaintiffs propose certification of the following classes subject to amendment as necessary:

        a.  Class 1: Persons or entities who own properties where the FHFA maintains an interest and is directing, controlling, and threatening to foreclose without a constitutional appropriation from Congress;

        b.  Class 2: Persons or entities who own properties where the FHFA maintained an interest and directed and controlled a foreclosure without a constitutional appropriation from Congress and where the property owner was able to retain the property after purchasing the property at a foreclosure sale;

        c.  Class 3: Persons or entities who owned properties where the FHFA maintained an interest and directed and controlled a foreclosure without a constitutional appropriation from Congress and the property owner was not able to maintain or recover the property after a foreclosure sale.

15.    **Size of Classes.** Based on information and belief, the members of the three classes defined above are so numerous that joinder of all members in separate actions is impractical. The number of members in each class is expected to exceed more than 40 persons or entities. Classes this size are sufficiently large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The identities of each member of each class are readily ascertainable from information and data in possession of the Defendants.

16.    **Class Representatives.**

        a.  Class 1**:** Named plaintiff Cape Jasmine is the owner of a property in which the FHFA claims an interest and anticipates an imminent foreclosure directed or controlled by the FHFA without a constitutional appropriation from Congress. Its claims are typical of the other members of the class and Cape Jasmine will fairly and adequately represent and protect the interests of the class.  Fed. R. Civ. P. 23(a)(3)-(4).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

b.  Class 2: Representative Daisey Trust is the owner of a property that it was forced to repurchase at a foreclosure sale after FHFA unlawfully directed and controlled a foreclosure on its property without a constitutional appropriation from Congress. Its claims are typical of the other members of the class and Daisey Trust will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(3)-(4).

c.  Class 3: Representative Saticoy Bay is the former owner of a property that was unlawfully foreclosed on at the direction and control of FHFA without a constitutional appropriation from Congress and was unable to repurchase its property at the foreclosure sale. Its claims are typical of the other members of the class and Saticoy Bay will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(3)-(4).

17.    **Common Questions of Law and Fact.** This action requires a determination of common questions of law and fact about the constitutionality of the FHFA's self-funding and spending mechanisms, which are outside of the congressional appropriations process, and whether they violate the Constitution's Appropriations Clause of Article I, Section 9, Clause 7, as well as the non-delegation doctrine and other separation-of-powers principles. Adjudication of these legal issues will, in turn, determine whether FHFA may either foreclose on the class members (Class 1) or otherwise owe compensation to the class members for constitutional violations and wrongful foreclosures (Classes 2 and 3). Fed. R. Civ. P. 23(a)(2).

18.    **FHFA Has Acted on Grounds Generally Applicable to the Classes.** By funding itself and spending without a constitutional appropriation from Congress to threaten foreclosures (Class 1) and directing, controlling, and effectuating foreclosures (Classes 2 and 3), FHFA has acted (or refused to act) on grounds generally applicable to the relevant classes. Fed. R. Civ. P. 23(b)(2). Separate actions by each class member would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the FHFA on the legal issues. Fed. R. Civ. P. 23(b)(1)(A). Additionally, separate actions by each class member would, as a practical matter, be dispositive of the interests of the other class members who are not parties to

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

the individual adjudications and would substantially impair and impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B). Certification of each class is therefore proper under Federal Rule of Civil Procedure 23(b).

19.     **Questions of Law and Fact Common to the Classes Predominate Over Individual Issues.** The claims of individual class members are more efficiently adjudicated on a class-wide basis. Any interest that individual members have in individually controlling the prosecution of separate actions is outweighed by the efficiency, in time and cost, of the class mechanism. Thus, a class action is superior to other available methods of adjudication or individual, piecemeal litigation. There are no unusual difficulties to be encountered in the management of this class action. Upon information and belief, no class action suit has been filed against FHFA over the legal issues presented or for the relief requested in this action for the same or similar class. Concentrating litigation in this particular forum with this class action is desirable compared to a multiplicity of suits in this District or across the nation. Issues as to the constitutionality of FHFA's funding and spending mechanisms as they relate to foreclosures predominate over any questions unique to individual members of the class. Certification is therefore also proper under Federal Rule of Civil Procedure 23(b)(3).

20.     **Venue.** This class will be most efficiently prosecuted in the District of Nevada, the Representative Plaintiffs' domicile.

21.     **Class Counsel.** Representative Plaintiffs have retained experienced and competent class counsel to adequately and vigorously prosecute the claims and represent each class.

### GENERAL FACTUAL ALLEGATIONS

A.     **Congress Unconstitutionally Structures the Federal Housing Finance Agency.**

22.     Representative Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

23.     In 2008, Congress passed, and President Bush signed, the Housing and Economic Recovery Act (HERA), the statute which created the FHFA. The 2008 Congress created FHFA as an "independent agency" charged with regulating the federal housing mortgage market, including

Fannie Mae and Freddie Mac. *Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021) (quoting 12 U.S.C. § 4511).

24.     Fannie Mae and Freddie Mac are for-profit stockholder owned corporations organized and existing under the Federal Home Loan Corporation Act. Fannie Mae and Freddie Mac buy and sell mortgages, often pooling them into mortgage-backed securities for investors.

25.     In its effort to make FHFA an "independent agency," Congress gave FHFA sweeping powers and largely insulated FHFA from democratic accountability. Congress attempted to achieve this goal in two ways. First, it insulated the FHFA Director from presidential removal. And second, it granted FHFA budgetary independence.

26.     The Supreme Court has already rejected the first aspect of the 2008 Congress's attempts to insulate FHFA from democratic accountability. In *Collins*, the Supreme Court held that HERA's prohibition on presidential firing of the FHFA director at will violates the separation of powers and is unconstitutional. 141 S. Ct. at 1783.

27.     FHFA's funding and budgetary structure also violates the Constitution. Article I of the Constitution states "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. CONST. art. I, § 9, cl. 7. But, as the Supreme Court recognized, "FHFA is not funded through the ordinary appropriations process." *Collins*, 141 S. Ct. at 1772. Rather, FHFA is free to determine its own budget with no oversight from Congress. *Id.*

28.     FHFA's own statements and reports admit the constitutional violation. For example, its FY2022 Performance and Accountability Report states "FHFA is financed through revenue from assessments and is considered a non-appropriated entity (FHFA does not receive any appropriated funds from Congress)."

29.     Not only that, but FHFA may itself collect the budget it determines to be appropriate for itself. Indeed, HERA grants the FHFA Director full control over FHFA's funding outside of the typical appropriations process. 12 U.S.C. § 4516. Instead of funding through bicameral passage and presentment of appropriations bills as the Appropriations Clause requires,

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

the FHFA Director may establish and collect assessments, in an amount to be determined by the Director, directly from the entities that FHFA regulates—Fannie Mae, Freddie Mac, and the Federal Home Loan Banks. *Id.* § 4516(a).

30.     The only restraint on FHFA's funding power is the Director's unbounded judgment of what is "reasonable." *See id.* "Reasonable" here is a blank check for FHFA to collect *unlimited* funds. HERA also specifies that "[t]he amounts received by [FHFA] from any assessment under this section shall not be construed to be Government or public funds or appropriated money." *Id.* § 4516(f)(2).  The Director has sole discretion to decide how to use the assessed funds for compensation and "all other expenses of the Director and the Agency." *Id.* § 4516(f)(4). Congress provided no guidelines, boundaries, or intelligible principles to cabin the Director.

31.     In practical terms, this authority amounts to an unconstrained power to collect and spend money, as FHFA regulates entities that have *over $8 trillion* of assets from which it may freely draw. *See* Statement of Sandra L. Thompson, FHFA Director, Before the House Comm. On Fin. Servs. (July 20, 2022), https://bit.ly/3AnDFVq (last visited June 23, 2023) [hereinafter Statement of Thompson]. The Director may use these funds not only for FHFA's expenses but also "to maintain a working capital fund." 12 U.S.C. § 4516(a)(3). The Director alone determines the amount of those assessments. *Id.*

32.     In September 2008, pursuant to HERA, FHFA's then-Director placed Fannie Mae and Freddie Mac into a conservatorship.

33.     Once placed in conservatorship, FHFA immediately succeeded to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A)(i). FHFA may "take over the assets of and operate," "collect all money due [to]," "perform all function of," "preserve and conserve the assets and property of" and contract on behalf of Fannie Mae and Freddie Mac. 12 U.S.C. § 4617(b)(2)(B); *see id.* § 4617(b)(2)(C)-(E), (J).

34.     Also as conservator, FHFA "may transfer or sell any asset or liability of the

8

regulated entity in default, and may do so without any approval, assignment, or consent with respect to such transfer or sale." 12 U.S.C. § 4617(b)(2)(G).

35.     As conservator for Fannie Mae and Freddie Mac, FHFA is a designated Federal Property Manager ("FPM"). 12 U.S.C. § 5220(a)(1)(A). As a federal property manager, FHFA must oversee foreclosures, including with its servicers. *See id*. § 5220(b)(1); *see also id*. § 5220(c). FHFA must submit periodic reports about the number of foreclosures that occur. *Id*. § 5220(b)(5).

36.     Thus, FHFA directly and indirectly, through Fannie Mae, Freddie Mac, their servicers, and others, controls, directs, supervises, participates in and/or funds the foreclosure of delinquent loans and mortgages. FHFA is ultimately responsible for all the foreclosure operations and activities of Fannie Mae and Freddie Mac.

37.     Each threatened or completed foreclosure by Fannie Mae, Freddie Mac, their servicers or other agents is directly traceable to FHFA and its unconstitutional funding mechanisms and FHFA's unconstitutional conduct. The injuries of each member of the proposed classes are attributable to the unconstitutional statutes and the FHFA's unconstitutional direct and indirect conduct.

38.     For example, in just the first two months of 2023, through the entities that it manages and regulates, FHFA oversaw and controlled more than 3,000 foreclosure sales and 13,000 foreclosure starts.

39.     FHFA's operations—including the foreclosures of properties through Fannie Mae, Freddie Mac, their servicers, and others—are unconstitutionally funded and FHFA unconstitutionally spends money without constraint or constitutional appropriations.

40.     At the September 2023 preliminary injunction hearing in this case, FHFA represented and admitted through counsel that there were no immunities, bars, defenses, or other obstacles that would preclude Plaintiff from seeking monetary damages as a remedy should FHFA's funding and spending mechanisms or foreclosure practices later be deemed unconstitutional or unlawful.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## ALLEGATIONS OF REPRESENTATIVE PLAINTIFFS

### A.    Class 1 Representative Plaintiff Cape Jasmine Court Trust

41.    Representative Plaintiff Cape Jasmine repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

42.    A deed of trust between nonparty borrowers and KB Home Mortgage Company (the "Desert Pond Lender") was recorded on May 24, 2005, granting the Desert Pond Lender a security interest in the real property known as 167 Desert Pond Avenue, Henderson, Nevada 89015 ("Desert Pond Property") to secure the repayment of $235,000.00. The Deed of Trust also listed Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and FATCO as the trustee.

43.    Upon information and belief, Fannie Mae or Freddie Mac purchased the loan in or around July 2005.

44.    On May, 25. 2012, Nevada Association Services on behalf of Horizon Heights Homeowners Association held a foreclosure sale where non-party Desert Pond Avenue Trust purchased the Desert Pond Property for $7,100.00. A Foreclosure Deed reflecting the purchase was recorded on May 31, 2012.

45.    Cape Jasmine obtained the Desert Pond Property from Desert Pond Avenue Trust, and a Deed memorializing that transaction was recorded on June 19, 2012. Thus, Plaintiff possesses unique, irreplaceable property rights in the property.

46.    As of the filing of this complaint, FHFA has not directed its servicer or agents to record a Notice of Default or Notice of Sale to begin the foreclosure process on the Desert Pond Property.

47.    Nonetheless, because FHFA still claims an interest in the loan and maintains the loan has not been paid, it is likely that FHFA will directly or indirectly direct, control, notice, and conduct an imminent foreclosure sale without constitutionally appropriated funds in violation of the Constitution. Therefore, Plaintiff is being threatened with irreparable harm and the loss of its property rights.

48.    All other class members of Class 1 are similarly situated to Cape Jasmine and

10

subject to the same constitutional and legal rights violations. Common questions of law and fact predominate over any differences.

**B.    Class 2 Representative Plaintiff Daisey Trust.**

49.    Representative Plaintiff Daisey Trust repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

50.    A deed of trust between nonparty borrowers and Countrywide Home Loans, Inc. ("the Newburg Lender") was recorded on January 3, 2007, granting the Newburg Lender a security interest in the real property known as 33 Newburg Avenue, North Las Vegas, Nevada 89032 ("Newburg Property") to secure the repayment of $198,500.00. The Deed of Trust also listed Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and Reconstruct Company, N.A. as the trustee.

51.    Fannie Mae purchased the loan in or around January 2007.

52.    On or about March 27, 2012, Nevada Association Services, Inc., the Newburg HOA Trustee, on behalf of the Newburg HOA, recorded a Notice of Foreclosure Sale.

53.    On August 24, 2012, Representative Daisey Trust purchased the Newburg Property at the foreclosure sale. Thus, Daisey Trust obtained unique, irreplaceable property rights.

54.    On August 30, 2012, the Newburg HOA, through the Newburg HOA Trustee, recorded a foreclosure deed memorializing Representative Daisey Trust's purchase.

55.    Years later, in September 2023, the FHFA directly and/or indirectly directed and controlled a foreclosure sale on the Newburg Property by unilaterally spending funds without a congressional appropriation from Congress.

56.    As a result of the unconstitutionally funded foreclosure, Daisey Trust was forced to spend additional funds to repurchase the property at the foreclosure sale. Daisey Trust would not have had to expend funds to repurchase a property that it had already bought but for FHFA's unconstitutional foreclosure.  Therefore, Daisey Trust has incurred substantial monetary damages far in excess of $75,000.00 and in an amount to be determined at trial.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

57.     All other class members of Class 2 are similarly situated to Daisey Trust and subject to the same constitutional and legal rights violations. Common questions of law and fact predominate over any differences.

**C.     Representative Plaintiff Saticoy Bay LLC, Series 10007 Liberty View**

58.     Representative Plaintiff Saticoy Bay LLC repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

59.     Upon information and belief, a deed of trust between nonparty borrowers and Bravo Credit Corporation (the "Liberty View Lender") was recorded on July 28, 2005, granting the Liberty View Lender a security interest in the real property known as 10007 Liberty View Way, Las Vegas, Nevada 89148 ("Liberty View Property") to secure the repayment of $564,300.00. The Deed of Trust also named MERS as the beneficiary and Fidelity National Title Insurance Company as the trustee.

60.     Upon information and belief, Freddie Mac or Fannie Mae obtained an interest in the Liberty View Property in or around June 2022.

61.     On May 25, 2013, the Southern Terrace Homeowners Association held a foreclosure sale where Saticoy Bay purchased the Liberty View Property. Thus, Saticoy Bay obtained unique, irreplaceable property rights.

62.     A Foreclosure Deed Upon Sale reflecting Saticoy Bay's purchase was recorded on May 30, 2013.

63.     Upon information and belief, on March 25, 2022, National Default Servicing Corp., at the direction and control of FHFA, noticed a foreclosure sale for the Liberty View Property.

64.     At FHFA's direction and control, the foreclosure sale occurred in or around March 25, 2022. FHFA lacked a constitutional source of funding and spending to direct and control the foreclosure and unlawfully used unappropriated funds to do so.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

65.     Upon information and belief, third/non-party Catamount Properties 2018, LLC purchased the Liberty View Property for $615,000.00. A Trustee's Deed Upon Sale reflecting the purchase was recorded on June 1, 2022.

66.     As a result of the unconstitutionally funded foreclosure, Saticoy Bay lost its property rights and the monetary value of the property. Therefore, Saticoy Bay has incurred substantial monetary damages far in excess of $75,000.00 in an amount to be determined at trial.

67.     All other class members of Class 3 are similarly situated to Saticoy Bay and subject to the same constitutional and legal rights violations. Common questions of law and fact predominate over any differences.

**FIRST CLAIM FOR RELIEF**
**Violation of the Appropriations Clause of the United States Constitution.**
**(On Behalf of All Three Classes)**

68.     Representative Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

69.     The Supreme Court has recognized a cause of action for equitable relief to redress constitutional violations by federal officials, particularly those that violate separation of powers principles. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

70.     Additionally, the Administrative Procedure Act requires the Court to hold unlawful and set aside any agency action that is "contrary to constitutional right, power, privilege, or immunity" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(B). Similarly, the Declaratory Judgments Act empowers the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

71.     Moreover, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), authorizes a damages action against federal officials for constitutional violations like those alleged herein.

72.     Additionally, the Constitution itself directly authorizes a damage action for constitutional violations like those alleged herein.

73.     FHFA is an agency of the United States.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

74.   Director Thompson is a federal official for the purposes of *Bivens*.

75.   Article I, Section 9, Clause 7 of the United States Constitution provides, "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" The power of the purse belongs solely to Congress. *See* U.S. CONST. art. I, § 1 ("[a]ll legislative Powers herein granted shall be vested in a Congress of the United States.").

76.   Contrary to this constitutional command, HERA and 12 U.S.C. § 4516 provide that the FHFA shall be funded through assessments from the entities that it regulates rather than from an appropriation passed by Congress and signed by the President.

77.   FHFA's Director unilaterally sets the amount of assessments, establishes its own budget, and spends funds without congressional oversight or any democratic accountability.

78.   The Supreme Court has recognized that "FHFA is not funded through the ordinary appropriations process." *Collins*, 141 S. Ct. at 1772.

79.   FHFA openly admits that it is a so-called non-appropriated entity and does not receive any appropriated funds from Congress.

80.   FHFA's unilateral self-funding initiative is a permanent power and is not temporally limited as it should be according to historical practice and as is inherent in the term "appropriation."

81.   The 2008 Congress that enacted HERA cannot purport to tie the hands of all future Congresses to exercise oversight over the FHFA. Congress cannot simply delegate or cede the power to budget, raise, appropriate, or spend money entirely to an executive agency.

82.   Accordingly, FHFA's self-funding structure cannot be reconciled with the text, structure, and history of the Appropriations Clause or the Supreme Court's separation-of-powers precedent, including the Nondelegation Doctrine.

83.   HERA and, specifically, 12 U.S.C. § 4516 violate the Appropriations Clause, the Separation of Powers, and/or the Nondelegation Doctrine by allowing FHFA to self-fund and unilaterally spend public money without an appropriation from Congress. As a result, 12 U.S.C. § 4516 and related portions of HERA must be declared unconstitutional and unlawful. *See also* 12 U.S.C. § 4516(f)(2).

14

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

84.    All FHFA actions as related to foreclosure sales taken without a constitutional appropriation from Congress are void, unlawful, and must be declared so and be set aside.

85.    FHFA's efforts to threaten, control, manage, supervise, direct, fund, and/or effectuate the foreclosure on Representative Plaintiffs' Properties and their similarly situated class members are unconstitutionally funded and without a constitutional appropriation. Therefore, any foreclosure conduct directed and controlled by FHFA constitutes unconstitutional agency action and it is void, unlawful, and must be declared so and be set aside.

86.    As described above, FHFA's threatening, directing, supervising, controlling, managing, funding, and/or otherwise participating in foreclosure conduct against the Representative Plaintiffs and their similarly situated class members without a proper appropriation violates the Appropriations Clause, Separation of Powers, and the Nondelegation Doctrine. The FHFA's action—and all those that are caused by and flow from it—must be declared unlawful, enjoined, and set aside.

87.    Members of proposed Classes 2 and 3 are entitled to compensatory damages for the amounts they were forced to spend to keep their properties in the face of FHFA's unconstitutional foreclosures and/or the value of the properties (and associated investments) that they lost as a result of the FHFA's unconstitutional foreclosures.

## SECOND CLAIM FOR RELIEF
### Violation of the Non-Delegation Doctrine.
### (On Behalf of All Three Classes)

88.    Representative Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraph as though fully set forth herein.

89.    The Supreme Court has recognized a cause of action for equitable relief to redress constitutional violations by federal officials, particularly those that violate separation of powers principles. *See Free Enter. Fund*, 561 U.S. at 491 n.2.

90.    Additionally, the Administrative Procedure Act requires the Court to hold unlawful and set aside any agency action that is "contrary to constitutional right, power, privilege, or immunity" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(B). Similarly, the Declaratory Judgments Act empowers the Court to

15

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

"declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

91.     Moreover, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), authorizes a damages action against federal officials for constitutional violations like those alleged herein.

92.     Additionally, the Constitution itself directly authorizes a damage action for constitutional violations like those alleged herein.

93.     FHFA is an agency of the United States.

94.     Director Thompson is a federal official for the purposes of *Bivens*.

95.     Article I, Section 9 of the United States Constitution provides, "All legislative Powers herein granted shall be vested in a Congress of the United States." As the Supreme Court has explained, "[t]he non-delegation doctrine provides that 'Congress may not constitutionally delegate its legislative power to another branch of Government." *United States v. Kelly*, 874 F.3d 1037, 1047 (9th Cir. 2017) (quoting *Touby v. United States*, 500 U.S. 160, 165 (1991)).

96.     While Congress retains the authority to "confer substantial discretion on executive agencies to implement and enforce the laws," *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019), such delegation is constitutional only if "Congress 'lay[s] down by legislative act and intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform,'" *id.* (alterations in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

97.     Contrary to this constitutional command, HERA and 12 U.S.C. § 4516 violate the non-delegation doctrine by providing the FHFA unbounded powers to determine its funding and spending without providing an intelligible principle to guide the exercise of its vast discretion.

98.     FHFA's Director unilaterally sets the amount of assessments, establishes its own budget, and unilaterally spends without congressional oversight or any democratic accountability or an intelligible principle governing the exercise of the FHFA Director's discretion.

99.     Specifically, 12 U.S.C. § 4516(1) provides that "The Director shall establish and collect from the regulated entities annual assessments in an amount not exceeding the amount

16

sufficient to provide for reasonable costs . . . and expenses of the Agency." *See also* 12 U.S.C. § 4516(b)(2). The standard "reasonable costs" is not an intelligible principle when the FHFA Director retains boundless discretion to determine what is "reasonable." As a result, 12 U.S.C. § 4516 and related portions of HERA must be declared unconstitutional and unlawful.

100.   All FHFA foreclosure conduct taken directly or indirectly under guise of the unlawful delegation of constitutional authority are void, unlawful, and must be declared so and set aside.

101.   FHFA's efforts to threaten, control, manage, supervise, direct, fund and/or effectuate the foreclosure on the Representative Plaintiffs' Properties and their similarly situated class members are effectuated through unconstitutionally delegated legislative authority. Therefore, FHFA's foreclosure conduct constitutes unconstitutional agency action and it is void, unlawful, and must be declared so and be set aside.

102.   As described above, FHFA's threatening, directing, supervising, controlling, managing, funding, and/or otherwise participating in the foreclosure conduct against the Representative Plaintiffs and their similarly situated class members under unlawfully delegated authority violates Separation of Powers and the Nondelegation Doctrine. The FHFA's actions— and all those that are caused by and flow from it—must be declared unlawful, enjoined, and set aside.

103.   Members of proposed Classes 2 and 3 are entitled to compensatory damages for the amounts they were forced to spend to keep their properties in the face of FHFA's unconstitutional foreclosures and/or the value of the properties (and associated investments) that they lost as a result of the FHFA's unconstitutional foreclosures.

### THIRD CLAIM FOR RELIEF
**Wrongful Foreclosure.**
**(On Behalf of the Second and Third Classes)**

104.   Representative Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

105.   Courts recognize a cause of action for wrongful foreclosure. *See Bergsrud v. Bank of Am., N.A.*, 746 F. App'x 662, 622 (9th Cir. 2018) (recognizing a cause of action for wrongful

17

foreclosure under Nevada law). "Wrongful foreclosure claims do not require particular elements, since a party may challenge a foreclosure sale in various ways." *Silvestre v. MTC Fin., Inc.*, No. 2:14-CV-01385-RFB-NJK, 2015 WL 5830818, at *4 (D. Nev. Oct. 5, 2015). At minimum, a wrongful foreclosure occurs when the foreclosing party lacked authority to effectuate the foreclosure. *See, e.g.*, *Bank of Am., N.A. v. Tapestry at Town Center Homeowners Ass'n*, 263 F. Supp. 3d 1063, 1067-68 (D. Nev. 2017) ("Further, '[a] wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself.'" (alteration in original) (quoting *McKnight Family, LLP v. Adept Mgmt.*, 129 Nev. 610, 616, 310 P.3d 555, 559 (2013))).

106.    FHFA's efforts to control, manage, supervise, direct, and/or fund the foreclosure on Representative Plaintiffs' Properties and their similarly situated class members are unconstitutionally funded and violate the Appropriations Clause, Separation of Powers and Nondelegation Doctrines as described above. As such, the foreclosure actions constitute a wrongful foreclosure as they lack authority to carry out those actions.

107.    There are no administrative remedies that apply in these circumstances to the wrongful foreclosure claims of Classes 2 and 3. Alternatively, any administrative remedies have been waived, forfeited. Excused, or satisfied under the circumstances.

108.    Members of proposed Classes 2 and 3 are entitled to compensatory damages for the amounts they were forced to spend to keep their properties in the face of FHFA's unconstitutional and wrongful foreclosures and/or the value of the properties (and associated investments) that they lost as a result of the FHFA's unconstitutional and wrongful foreclosures.

## **PRAYER FOR RELIEF**

WHEREFORE, as applicable to each class, Representative Plaintiffs pray for themselves and all other similarly situated class members the following relief against FHFA, its officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with them:

1.    For an order certifying each proposed class as a class action and appointing the Representative Plaintiffs and their counsel to represent each class pursuant to Federal Rule of Civil Procedure 23, and directing notice to be given to members of each class once certified;

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

2.      A temporary, preliminary, and permanent injunction enjoining FHFA from expending any monies to direct, supervise, control, manage, fund, or otherwise participate, directly or indirectly, in the foreclosure on Representative Plaintiffs' Properties;

3.      A temporary, preliminary, and permanent injunction enjoining all foreclosure related actions against Representative Plaintiffs' Properties that are caused by, or flow from, FHFA's violation of the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine;

4.      An order setting aside any action as described herein that facilitates the foreclosure on Representative Plaintiffs' Properties in violation of the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine;

5.      A declaratory judgment that 12 U.S.C. § 4516 violates the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine, and is unconstitutional;

6.      A declaratory judgment that FHFA's direct and indirect foreclosure related actions as described herein are unconstitutionally funded or paid for in violation of the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine;

7.      A declaratory judgment that FHFA's structure violates the Appropriations Clause, Separation of Powers, and/or Nondelegation Doctrine and declaring void the provisions of HERA that purport to fund FHFA by assessments on regulated entities, including entities currently under FHFA's conservatorship;

8.      A declaratory judgment that the FHFA's direct and indirect foreclosure related actions as described herein are "contrary to constitutional right, power, privilege, or immunity" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(B).

9.      Compensatory damages in an amount to be determined at trial (Classes 2 and 3);

10.      Nominal damages (Classes 2 and 3);

11.      Pre-and post-judgment interest at the highest legal rate allowed by law;

12.      Attorneys' fees and costs incurred in the prosecution of this litigation;

13.      All other relief to which the Plaintiffs may show themselves to be entitled.

14.     The foregoing relief should be granted to Representative Plaintiffs, individually, and as to similarly situated non-parties on a nationwide basis.

## JURY DEMAND

Each Representative Plaintiff, for itself and for the members of each class, demands a trial by jury on all issues so triable.

DATED this 2nd day of November 2023.

PISANELLI BICE PLLC

By:    */s/ Jordan T. Smith*
          Jordan T. Smith, Esq., Bar No. 12097
          Brianna Smith, Esq., Bar No. 11795
          400 South 7th Street, Suite 300
          Las Vegas, Nevada 89101

*Attorneys for Plaintiffs and Proposed Classes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 2nd day of November, 2023, I caused to be e-filed/e-served a true and correct copy of the above and foregoing **FIRST AMENDED COMPLAINT (CLASS ACTION) AND JURY DEMAND** to all parties registered with the Court's CM/ECF system.

                                                    */s/ Shannon Dinkel*
                                                    An employee of Pisanelli Bice PLLC