Jordan T. Smith, Esq., Bar No. 12097
JTS@pisanellibice.com
Brianna Smith, Esq., Bar No. 11795
BGS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAISEY TRUST, by and through its trustee, Eddie Haddad; CAPE JASMINE CT. TRUST, by and through its trustee, Eddie Haddad; and SATICOY BAY LLC, SERIES 10007 LIBERTY VIEW, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HOUSING FINANCE AGENCY; SANDRA L. THOMPSON, in her official capacity as the Director of the Federal Housing Finance Agency, <br><br> Defendants. | Case No.: 2:23-cv-00978-APG-EJY <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANT FEDERAL HOUSING FINANCE AGENCY'S MOTION TO EXPUNGE LIS PENDENS AND FOR INJUNCTIVE RELIEF [ECF NO. 44]** <br><br> **ORAL ARGUMENT REQUESTED** |

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## I.    INTRODUCTION

The Federal Housing Finance Agency ("FHFA") has been unconstitutionally funded since its inception, unilaterally spending uncapped public funds to manipulate the Nation's housing market while bullying anyone with the audacity to challenge it. The FHFA's present Motion is simply the latest episode. The FHFA—a Leviathan federal agency without any limit on its self-selected budget—plays the victim and maligns taxpayers for engaging in indisputably *legal* activity. Make no mistake, the FHFA with its unlimited resources *could* protect its supposed interests and the federal fisc by pursuing those who defaulted on the underlying loans or otherwise let the properties go under. Instead, the FHFA takes the easier route. It harangues subsequent purchasers who improve the properties, provide affordable housing (made unaffordable through FHFA-induced market dislocations), and prevent eyesores from blighting neighborhoods. If the FHFA had its way, thousands of abandoned homes would dot the landscape, attracting crime and nuisance. Frankly, it is unbecoming of the federal government to besmirch citizens for legal, beneficial, and sophisticated business models (let alone outsmarting government incompetence).

Alas, the overreaching relief sought by the FHFA and its director, Sandra L. Thompson, is moot. A review of the public record reveals that Reber Dr Trust—an unnamed class member— has recorded a Notice of Release of Lis Pendens for the subject property. Despite Defendants' mischaracterization of a lis pendens as an "attachment," "lien," or other encumbrance, title to the property has been transferred to Defendants. As a result of the unconstitutional foreclosure, Reber Dr Trust is no longer a member of proposed Class 1 seeking to prevent foreclosures and is now a member of proposed Class 3 seeking to set aside the foreclosure or recover monetary damages for its losses. In any event, there is no longer a live controversy over the lis pendens, and the Court need not prematurely delve into the difficult constitutional questions surrounding FHFA's funding and structure in this unorthodox procedural posture. Some of the constitutional merits issues are currently pending in the fully briefed motion to dismiss. And, as stated in the recent Joint Status Report, Plaintiffs intend to amend the operative pleading to narrow and refocus the issues after the Supreme Court's recent decision in *Consumer Financial Protection Bureau v. Community*

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

*Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024) ("*CFPB*"). Defendants simply want to leapfrog the customary litigation course and rush the Court to an advisory decision on the important and obvious follow-up question to *CFPB*: Whether the FHFA's uncapped, standing appropriation complies with the Appropriations Clause.

Aside from the inability to expunge an already expunged lis pendens, the Court lacks jurisdiction and power to award an injunction to Defendants who have not asserted a counterclaim against the Plaintiffs. Even if the Court does have the authority, Defendants' requested injunction preventing Plaintiffs (and untold unrelated others) from recording a lis pendens is an unconstitutional prior restraint on protected First Amendment activity. Like all citizens, Plaintiffs have a right to petition and record property documents with local government-county recorders. Plaintiffs also have a right to publish to the world that there is an ongoing judicial proceeding that may affect title to real property. The Nevada Supreme Court has held that the act of recording a lis pendens is absolutely privileged. Any injunction against recording lis pendens does not maintain the status quo and is not necessary to preserve the Court's ability to rule in this matter. Such an injunction would be a drastic change to the status quo and harm the public by depriving future purchasers of information about real property disputes. Defendants will suffer no irreparable harm without an injunction because they concede monetary damages are available. Speculative and vague clichés about the public interest are not enough. Accordingly, the Court should deny the request for injunctive relief.

Alternatively, the Court should reserve ruling on both aspects of Defendants' motion until the Plaintiffs have filed their forthcoming amended complaint. If the Court takes any adverse action, it should require Defendants to post substantial bonds in compliance with NRS 14.015(6) to cover the proposed class representative and each proposed class member in Class 1 which seeks to enjoin the forthcoming foreclosures and the transfer of title and possession.

## II.    STATEMENT OF FACTS

### A.    The FHFA's Unconstitutional Funding Structure and Spending Excesses.

Congress created the Federal National Mortgage Association (Fannie) and the Federal Home Loan Mortgage Corporation (Freddie) in 1938 and 1970, respectively. *Collins v. Yellen*,

141 S. Ct. 1761, 1770 (2021) (citing National Housing Act Amendments of 1938, 52 Stat. 23; Federal Home Loan Mortgage Corporation Act, 84 Stat. 451). Both enterprises operate under congressional charters as for-profit corporations with private shareholders. *Id*. (citing Housing and Urban Development Act of 1968, § 801, 82 Stat. 536, 12 U.S.C. § 1716b; Financial Institutions Reform, Recovery, and Enforcement Act of 1989, § 731, 103 Stat. 429-436, note following 12 U.S.C. § 1452). Fannie and Freddie purchase, pool, and sell mortgages to investors. *Id*.

From 1992 to 2008, Fannie and Freddie were regulated by the Office of Federal Housing Enterprise Oversight (OFHEO) within the Department of Housing and Urban Development. *Id*. at 1770 n.1 (citing Federal Housing Enterprises Financial Safety and Soundness Act of 1992, §§ 1311–1313, 106 Stat. 3944-3946).   After the 2008 financial crisis, Congress passed the Housing and Economic Recovery Act (HERA) to create FHFA. (ECF No. 34 (First Amended Complaint) ¶ 23.) Congress structured FHFA as an "independent agency" charged with regulating the federal housing mortgage market, including Fannie and Freddie. *Collins*, 141 S. Ct. at 1770 (quoting 12 U.S.C. § 4511). At first, Congress insulated the FHFA's Director from presidential removal, but the Supreme Court declared the restriction unconstitutional. *Id*. at 1783.

Congress also abdicated its constitutional power of the purse and gave FHFA complete budgetary independence. As the Supreme Court recognized, "FHFA is not funded through the ordinary appropriations process." *Id.* at 1772. Instead, the FHFA Director may establish and collect assessments, in an amount to be determined by the Director, directly from the entities that FHFA regulates – Fannie, Freddie, and the Federal Home Loan Banks. 12 U.S.C. § 4516(a).

Unlike other federal agencies like the Consumer Financial Protection Bureau, there is no cap or limit to the amount of money that the FHFA can extract and spend. The only restraint on FHFA's funding and spending power is the Director's unchecked view of what is "reasonable." *Id*. ("The Director shall establish and collect from the regulated entities annual assessments in an amount not exceeding the amount sufficient to provide for reasonable costs (including administrative costs) and expenses of the Agency"). The statute provides no suitable standards or guardrails to assess or cabin the Director's "reasonableness."   The statute is a blank check for FHFA to collect *uncapped* funds. Equally as bad, HERA decrees that "[t]he amounts received by

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

[FHFA] from any assessment under this section shall not be construed to be Government or public funds or appropriated money." 12 U.S.C. § 4516(f)(2).

In effect, the FHFA can spend limitless amounts without any congressional authorization since FHFA regulates entities with *over $8 trillion* of assets from which it may freely draw. (*Id.* ¶ 31 (citing Statement of Sandra L. Thompson, FHFA Director, Before the House Comm. On Fin. Servs. (July 20, 2022).[1] As conservator for Fannie and Freddie, the FHFA uses its unlimited money to authorize, control, and direct home foreclosures. *See* 12 U.S.C. § 4617(b)(2); *see also* 12 U.S.C. § 5220. The Supreme Court has recognized "there can be no question that the FHFA's control over Fannie Mae and Freddie Mac can deeply impact the lives of millions of Americans by affecting their ability to buy *and keep their homes.*" *Collins*, 141 S. Ct. at 1786 (emphasis added).

FHFA also uses its bottomless pit of money to abuse the court system with private law firms rather than the usual Department of Justice lawyers. In the words of one jurist, the Enterprises have "display[ed] a serious and alarming lack of respect for the nation's judiciaries." *Fed. Nat. Mortg. Ass'n v. Bradbury,* 32 A.3d 1014, 1016 (Me. 2011) (affirming sanction of Fannie Mae for submitting bad faith affidavit). Courts have found that Defendants' "fraudulent evidentiary filings are being submitted to courts is both violative of the rules of court and ethically indefensible." *Id.*  Other courts have observed similar abuses unbefitting a federal agency. *See, e.g., Bravo v. Fed. Nat'l Mortg. Ass'n*, 2020 WL 8994225, at **1-2 (D.P.R. Mar. 4, 2020) (sanctioning and defaulting Fannie Mae for "flout[ing] court orders" and discovery misconduct); *Ackerman v. PNC Bank, Nat. Ass'n*, , 2013 WL 3124509, at *3 (D. Minn. June 19, 2013) (finding Fannie Mae acted "in willful violation of a court order" and advanced "positions [that] were not substantially justified"); *Holm v. Wells Fargo Home Mortg., Inc.,* 514 S.W.3d 590, 596–97 (Mo. 2017) (affirming sanctions against Feddie Mac for "flagrant and intentionally obstructive conduct during discovery proceedings); *In re Fannie Mae Sec. Litig*., 552 F.3d 814, 816 (D.C. Cir. 2009) (affirming contempt order against OFHEO—FHFA's predecessor).

---

[1]    *Available at* https://www.fhfa.gov/news/testimony/statement-of-sandra-l.-thompson-fhfa-director-before-the-house-committee-on-financial-services

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Regrettably, Defendants' abuses and bully tactics remain unchanged in this case. The FHFA's unconstitutionally uncapped spending spree enables this litigious conduct. It is unlikely the FHFA's litigation misconduct would continue unabated if there was a budgetary cap and greater congressional oversight on its funding and activities.

**B.    The Litigation Road So Far.**

One Plaintiff, Daisey Trust, filed suit on June 23, 2023, alleging that the FHFA's then-impending foreclosure on its property was unconstitutionally self-funded in violation of the Appropriations Clause of the United States Constitution and separation of powers principles. (ECF No. 1.) At the time of filing, the United States Supreme Court had granted certiorari in *CFPB* which presented a virtually identical argument related to the Consumer Finance Protection Bureau. *CFPB v. CFSA,* No. 22-448 (cert. granted Feb. 27, 2023). Along with the complaint, Daisey Trust filed a motion for temporary restraining order and preliminary injunction seeking to enjoin FHFA's foreclosure and constitutional violations. (ECF Nos. 2 & 3.) In detail, Daisey Trust described the textual, historical, structural, and precedential reasons that FHFA's conduct violates the Constitution. (ECF No. 3 at 8-17.) In short, Daisey Trust argued that an "appropriation" under the Constitution means a "periodic payment[] disbursed from the Treasury, generally for a specific purpose and for a specific time period." (*Id*. at 12.)

Daisey Trust also argued that the Court should enter an injunction to maintain the status quo until the Supreme Court provided guidance on the Appropriations Clause question in *CFPB*. Defendants opposed the motion for temporary restraining order and preliminary injunction on July 7, 2023. (ECF No. 11.) Daisey Trust filed its reply in support of motion for temporary restraining order and preliminary injunction on July 28, 2023. (ECF No. 17.)

After the briefing was closed, and after years of inaction, Defendants directed a foreclosure on Daisey Trust's property. In addition, the Defendants filed a motion to dismiss the complaint raising many of the same arguments made in response to the motion for temporary restraining order and preliminary injunction. (*See generally*, ECF No. 18.)

On September 13, 2023, the Court held a hearing on the motion for temporary restraining order and preliminary injunction. (ECF No. 24.) After hearing oral argument, the Court denied the

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

motion, but allowed Daisey Trust to file an amended complaint. (ECF No. 31.) Accordingly, a first amended complaint was filed on November 2, 2023. (ECF No. 34.) Based upon the filing of the amended complaint, Defendants' motion to dismiss was denied as moot. (ECF No. 35.)

The Supreme Court had not yet decided *CFPB* when the first amended complaint was filed. So, like the original complaint, the first amended complaint seeks a determination of legal and factual questions about the constitutionality of the FHFA's self-funding and non-time limited spending mechanisms as violations of the Appropriations Clause, the non-delegation doctrine, and other separation-of-powers principles. (ECF No. 34 at ¶ 17.) The amended complaint also alleged a wrongful foreclosure claim. (*Id.* at ¶¶ 104-08.)

However, to avoid Defendants' whack-a-mole mootness efforts that they played with Daisey Trust, the amended complaint pleads a class action against Defendants on behalf of three proposed classes:

(1) property owners where FHFA is threatening to foreclose without a constitutional appropriation from Congress;

(2) property owners where the FHFA has foreclosed on property without a constitutional appropriation from Congress and the property owners were able to retain the property by repurchasing the property; and

(3) property owners whose property has been unconstitutionally foreclosed upon by FHFA but the property owners were not able to maintain or recover the property after foreclosure.

(*See generally id.* at ¶ 14.) The first proposed class seeks an injunction to prevent unconstitutional foreclosures and the next two classes seek to set aside unconstitutional agency action or monetary damages. (*Id.* at ¶¶ 86- 87, 102-03, 107-08; Prayer for Relief at ¶¶ 1-10.)

Defendants moved to dismiss the first amended complaint on December 18, 2023, and briefing was completed on February 16, 2024. (ECF Nos. 36, 39, 42.)

**C.      The United States Supreme Court Issues *CFPB* and this Court Requests a Status Report.**

While Defendants' motion to dismiss was pending, the United States Supreme Court issued its opinion in *CFPB* on May 16, 2024. This Court promptly ordered the parties to confer

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

about whether the *CFPB* decision "impacts the case and whether it requires amendment of the first amended complaint, withdrawal and refiling of the pending motion to dismiss, or some other action." (ECF No. 43.)

The parties conferred and submitted a Joint Status Report on June 21, 2024. (ECF No. 45.) As stated in the Joint Status Report, Plaintiffs contend the Supreme Court's *CFPB* decision answered some – but not all – questions raised by this litigation. Most directly, the Supreme Court defined the meaning of an "appropriation" under the Appropriations Clause as a law specifying an amount, for a specific purpose, from a specific source. *CFPB*, 601 U.S. at 429-32. The Court held that an appropriation did not need to be time limited. *Id.* at 431-32. Nonetheless, the presence of funding and spending caps played a prominent role in the Court's historical analysis and its decision to uphold the CFPB's funding structure. Unlike the CFPB, the FHFA's funding structure has no cap. Instead, the sole limitation on FHFA's power to raise and spend is its own Director's unbounded judgment of what is a "reasonable" amount. *See* 12 U.S.C.A. § 4516(a). Thus, the FHFA's structure remains unconstitutional under *CFPB*'s reasoning and holding. (*See* ECF No. 45 at 1-2.)

Unsurprisingly, Defendants disagree. (ECF No. 45 at 2-4.) Defendants claim that that FHFA's funding mechanism constitutes a "valid appropriation" because it claims to have "(1) a specified source and (2) a designated purpose." (*Id.* at 2.) Accordingly, Defendants contend that *CFPB* "is fully dispositive" of the issues Plaintiffs' raise. (*Id.* at 3.) *CFPB* may be dispositive on the constitutionality of uncapped standing appropriations but the opinion cuts against Defendants and in favor of Plaintiffs.

### D.  The Proposed Class Representatives Intend to Amend their Operative Complaint.

Post-*CFPB*, this case has become more straightforward. *CFPB* has narrowed the disputed issues and elevated the importance of the lack of funding and spending caps. As a result, the Court no longer needs to address many issues in the currently pending motion to dismiss. Plaintiffs propose that an amendment to the pleadings is necessary to remove the resolved issues and to develop more fully the uncapped spending infirmities in the FHFA's structure and actions.

An amendment – with more targeted motion practice to follow – will streamline this case and create a cleaner appellate record. Defendants recognize that additional "explanation" "would benefit the Court in resolving the case justly," (ECF No. 45 at 3), but declined to stipulate to an amendment. Because Defendants refused to stipulate, Plaintiffs intend to seek leave to file a motion to file an amended complaint with the accompanying pleading on or before July 31, 2024. (ECF No. 45.)

## III.    ARGUMENT

### A.    FHFA's Request to Expunge the Lis Pendens is Moot and Should Wait for Plaintiffs' Forthcoming Motion to Amend Complaint.

A motion is moot when the Court can no longer grant effective relief. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023); *see also Gibson v. Dzurenda*, 2021 WL 1110290, at *1 (D. Nev. Mar. 23, 2021) (motion for injunctive relief was moot because plaintiff was released from custody). "Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinion[s] advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotations omitted).

This rule applies to requests to release or expunge a lis pendens. A motion to expunge lis pendens becomes moot once the lis pendens is released. The Ninth Circuit has observed that "since the lis pendens has been expunged by the actions of the parties, there is no 'present live controversy.' We would only be issuing an advisory opinion. Therefore, this issue is moot." *Anning-Johnson Co. v. Coliseum Const., Inc.*, 956 F.2d 274 (9th Cir. 1992) (internal citation omitted). Other courts have ruled the same in a variety of contexts. *See, e.g.,  Chavez v. Nat'l Default Servicing Corp.*, 2011 WL 13229257, at *1 (C.D. Cal. Dec. 27, 2011) ("Because Ms. Chavez has voluntarily withdrawn the lis pendens, Defendants' motion to expunge the lis pendens is denied as moot."); *Hernandez v. California Reconveyance Co.*, 2010 WL 1911244, at *1 (S.D. Cal. May 10, 2010) ("[O]n April 27, 2010, Plaintiffs filed a Notice of Voluntary Withdrawal of the lis pendens thus mooting the motion to expunge."); *377 Realty Partners, L.P. v. Taffarello*, 2007 WL 9723954, at *3 (E.D. Tex. Jan. 8, 2007) ("Filing such notice should

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

effectively release the lis pendens. As such, this court is of the opinion that the 377 Parties' claim requesting the court to release the lis pendens is moot because the lis pendens has already, in effect, been released.").

Here, Defendants assert that "FHFA is entitled to an order expunging lis pendens recorded against the Reber Drive Property." (ECF No. 44 at 8.) But the public record shows that a "Notice of Release of Lis Pendens" for the Reber Drive property was recorded on July 1, 2024. (Decl. E. Haddad ¶ 8, Ex. 1; Ex. 2) Thus, there is nothing to expunge. The Court need not—and cannot grant—effective relief to Defendants. They have already received the relief they seek against Reber Dr Trust for this specific property. Defendants have not suggested any reasonable basis to believe that another lis pendens controversy will arise between the exact same parties (Reber Dr Trust and Defendants) over the exact same property. *See Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390-91 (9th Cir. 1985); *see also Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 308 (6th Cir. 2004) ("Because Chirco concedes that a future notice of lis pendens *against Gateway Oaks* is unlikely, his 'capable of repetition, yet evading review' argument fails and we dismiss his appeal as moot."). Indeed, now that Defendants have acquired the property on a credit bid at the Deed-of-Trust foreclosure sale, (ECF No. 44 at 7, 14-15), it is "'absolutely clear'" that a lis pendens dispute with Reber Dr Trust "'could not reasonably be expected to recur.'" *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Accordingly, the motion to expunge against Reber Dr Trust is moot.

Even if there were still a live controversy or some relief left to provide vis-à-vis Reber Dr Trust (there isn't), the proposed class representatives' expressed intent to amend their complaint after *CFPB* strongly counsels for waiting to address the merits until the pleadings are settled. To expunge a lis pendens, the Court considers whether "the party who recorded the notice has a fair chance of success on the merits in the action … and that if the party who recorded the notice prevails [it] will be entitled to relief affecting the title or possession of the real property." NRS 14.015(3)(b). The Court can only make a merits assessment of the actual claims presented. *Butts v. IndyMac Bancorp*, 2010 WL 11597611, at *6 (C.D. Cal. Mar. 26, 2010) ("Because the

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Court will be able to better determine the 'probable validity' of Plaintiff's real property claim after reviewing his amended complaint, the Court declines to expunge the lis pendens at this time. Defendants' Motion to Expunge Lis Pendens is denied without prejudice.").[2]

This Court has previously recognized the wisdom of waiting on expungement until after an amendment is complete. *See Toromanova v. Rushmore Loan Mgmt. Servs. LLC*, 2020 WL 2308223, at \*4 (D. Nev. May 8, 2020) (Gordon, J.) ("I previously denied Rushmore's motion to expunge without prejudice because I had not dismissed all of Toromanova's claims and had given her leave to amend, so the lawsuit remained pending."). The Court should do so again in this case.

Therefore, in addition to the withdrawal of the lis pendens itself, Plaintiffs' forthcoming amendment doubly moots the request to expunge the lis pendens. *See Phillips v. First Horizon Home Loan Corp.*, 2013 WL 1249919, at \*2 (D. Nev. Mar. 25, 2013) (noting the court denied Fannie Mae's motion to expunge lis pendens "on the basis they were moot as Plaintiffs had amended the Complaint."); *Noma v. Wells Fargo Bank Nat'l Ass'n*, 2011 WL 13220443, at \*9 (C.D. Cal. July 5, 2011) ("Further, having granted Plaintiff leave to amend the complaint, the Court reserves its ruling on Freddie Mac's motion to expunge the lis pendens."); *Carazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at \*6 (N.D. Cal. May 5, 2011) (denying motion to expunge the lis pendens "until the Court has an opportunity to consider the merits of Plaintiff's amended complaint, if she chooses to file one.") (citing *Edwards v. Aurora Loan Servs., LLC*, 2010 WL 2740173 (E.D. Cal. July 9, 2010) (dismissing plaintiff's complaint but denying motion

---

[2]     Defendants' arguments about Reber Dr Trust's ability to succeed or prevail on the merits under NRS 14.015 simply regurgitates the same positions from their pending motion to dismiss about some theories answered in *CFPB*. (*Compare* ECF Nos. 36 and 42 *with* ECF No. 44 at 15-18 ("In the interest of efficiency, FHFA incorporates those arguments here by reference."). Yet Defendants do not defend the FHFA's *uncapped*, unilateral budget that remains constitutionally infirm after *CFPB*. As discussed *infra*, FHFA's unconstitutional uncapped budget will be the focus of Plaintiffs' forthcoming second amended complaint on which Plaintiffs and the proposed classes *do* have a "fair chance" and likelihood of success on the merits. The FHFA's uncapped standing appropriation scheme violates the Appropriations Clause and non-delegation doctrine, leading to wrongful foreclosures. No class member could have raised these challenges in prior litigation as applied to impeding or past foreclosure sales because those threats had not arisen before prior litigation. (*Cf.* ECF No. 44 at 16.) Even so, to the extent necessary, Plaintiffs hereby incorporate by reference—just as Defendants have done—the arguments from Plaintiffs' Response to Defendants' Motion to Dismiss. (ECF No. 39.)

1    to expunge lis pendens pending filing of amended complaint); *Quiroz v. Countrywide Bank, N.A.*,

2    2009 WL 3849909 (C.D. Cal. Nov. 16, 2009)). [3]

3

4    [3]      Although the Court cannot (and should not) address them now, a couple other points are worth noting should they ever arise in a future *live* controversy: A

5    "plaintiff" or "party" should record a lis pendens "[i]n an action … affecting the title or possession of real property." NRS 14.010 ("plaintiff"); NRS 14.015 ("plaintiff," "party").

6         To begin, whether an unnamed class member qualifies as a "plaintiff" or "party" under

7    NRS 14.010 is *state law* statutory interpretation matter; it is not a matter of federal class action law. In these circumstances, the Nevada Supreme Court takes a broader view of who constitutes a

8    "plaintiff" or "party." *See Marcuse v. Del Webb Communities, Inc.*, 163 P.3d 462, 467 n.14 (Nev. 2007) (recognizing that Nevada takes a less strict view of party-standing status in class

9    action context and stating "[f]undamentally, however, class members are parties to the class action, even though they may be unnamed."); *Jane Roe Dancer I-VII v. Golden Coin,*

10   *Ltd.,* 176 P.3d 271, 275 (Nev. 2008) ("class actions brought under NRCP 23 toll the statute of limitations on all potential unnamed plaintiffs' claims"); *Benko v. Quality Loan Serv. Corp.*, 454

11   P.3d 1263, 1269 n.7 (Nev. 2019) ("[B]ecause it is a putative class action—and in the interest of consistency—any specific plaintiff's allegation is said here to have been alleged by Benko.").

12   Pursuant to Nevada state law, an unnamed potential class member qualifies as a "plaintiff" or "party" under NRS 14.010 because, by definition, Defendants' uniform actions and the common

13   questions of law and fact *affect* their constitutional real property rights. That's why they are potential class members in the first place. If the action didn't *affect* their property rights, they

14   wouldn't be putative class members.

15        If the Court has questions about whether an unnamed potential class member may record a lis pendens under NRS 14.010, the Court should certify the question to the Nevada Supreme Court. Nev. R. App. P. 5(a). Defendants concede "it is unclear if class members would

16   be 'plaintiffs' as that term is used in the statute." (ECF No. 44 at 13.)

17        Nonetheless, unnamed class members constitute "plaintiffs" or "parties" under federal class action law for purposes of NRS 14.010. "A class action is an illustration of a situation where

18   it is not feasible for all persons *whose interests may be affected by an action to be made parties to it*. It was invented by equity for situations in which the number of persons having substantially

19   identical interests in the subject matter or litigation is so great that it is impracticable to join all of them as parties.…" Restatement (First) of Judgments § 86 (1942) (emphasis added). The rights of

20   unnamed potential class members are *affected* by this litigation, but practical and efficiency concerns prevent naming all of them.

21        Defendants contend that an unnamed class member is not a plaintiff or party in any fashion before certification. (ECF No. 44 at 12-13.) But "a nonnamed class member's party status

22   does not depend on certification alone." *Owino v. CoreCivic, Inc.*, --- F. Supp. 3d ---, 2023 WL 9852795, at *7 (S.D. Cal. Nov. 2, 2023). "Nonnamed class members … may be parties

23   for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules *that may

24   differ based on context*." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) (emphasis added). For instance, before certification, filing a class action tolls the statute of limitations for unnamed

25   members. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). And even after certification, unnamed class members are still considered nonparties for citizenship and diversity

26   purposes. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Accordingly, putative class members "are treated like parties to the litigation for some purposes but not for others." 1 Newberg and

27   Rubenstein on Class Actions § 1:5 (6th ed. June 2024 Update). "This focus on the party status of absent class members is only of limited value because it begs the underlying issue concerning

28   whether the procedure or rule applies to persons who are not physically before the court, who are

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

11

not named and identified parties to the suit, and who are interested or involved solely because they share a common issue in controversy with a named party." *Id*. The absent class members' position is unique in the law "and attempts to analogize to conventional 'party' status are likely to fail." *Id*. So, for purposes of having property rights *affected* by this class action, unnamed class members qualify as parties or plaintiffs and they may put the world on notice of their competing claims under NRS 14.010.

Afterall, if unnamed class members like Reber Dr Trust are not considered parties in these circumstances, then Defendants' notice and service of this Motion was deficient and Reber Dr Trust has not been brought before the Court in the first place. *See* Fed. R. Civ. P. 4; Fed R. Civ. P. 5; Fed. R. Civ. P. 23(d)(1)(B) (requiring "appropriate notice to some or all class members" of "any step in the action"). Defendants have treated Reber Dr Trust as a party by asserting that it "will receive notice via the ECF system." (ECF No. 44 at 19; Decl. E. Haddad at ¶ 10, Ex. 1.)

For certain subclasses—of which Reber Dr Trust was a member when the lis pendens was recorded—this class action *affects* title and possession of real property. (*Cf.* ECF No. 44 at 13-15.) Class 1 members seek an injunction preventing unconstitutional foreclosures and, therefore, enjoining the transfer of title or possession. (ECF No. 34 at ¶¶86, 102; Prayer for Relief ¶¶ 2-3.) All proposed classes request that unconstitutional actions, including prior transfers, be set aside. (*Id*. at Prayer for Relief ¶ 4.) As a result, this action *affects* all potential class members' real property rights—title and possession—even if those rights cannot be finally *altered* until after class certification. *See U.S. v. Sanchez-Gomez,* 584 U.S. 381, 387 (2018) (stating "certification of a suit as a class action has important consequences for unnamed members of the class" because "[t]hose class members may be 'bound by the judgment' and are considered parties to the litigation *in many important respects*.") (emphasis added).

Even if unnamed class members do not have an interest in title or possession, the Nevada Supreme Court has recently clarified "that the plain language of NRS 14.010(1) does not limit a lis pendens to actions in which the plaintiff claims an ownership or possessory interest in the property." *Tahican, LLC v. Eighth Jud. Dist. Ct.,* 523 P.3d 550, 551 (Nev. 2023). The action need merely to "*affect*" the title or possession of real property. *Id*. at 554. This proposed class action *affects* the title and possession of real property for all unnamed class members.

Finally, a lis pendens is not within the ambit of Section 4617(j)(3). (*Cf.* ECF No. 44 at 8-11.) Section 4617(j)(3) only applies to a "levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency" or "involuntary lien attach[ed] to the property of the Agency." A lis pendens is none of these things. A lis pendens is simply constructive notice of potential litigation to the world. As the Reber Dr Trust property itself demonstrates, "[n]othing in Nevada's lis pendens statute expressly precludes transfer of the property after a notice of lis pendens has been recorded and has not been withdrawn or expunged. To the contrary, the statute contemplates that a transfer may occur and provides that a subsequent purchaser takes with notice of the underlying action." *Toromanova* 2020 WL 2308223, at *2. The Reber Drive property was transferred after the lis pendens was recorded because a lis pendens is not the functional equivalent of a lien or other attachment, and it does not secure any ownership interest in property. *Holland v. Anthony L. Barney, Ltd.*, 540 P.3d 1074, nn. 6, 20 (Nev. App. 2023). Thus, the lis pendens did not "deprive" Defendants of any property interest. (*Cf.* ECF No. 44 at 9.) Defendants have presented no evidence that the lis pendens dissuaded any bidders for the property. (*Cf. id.* at 11.) Reber Dr Trust was unable to maintain the property too. And, notably, despite their litigious history, Defendants fail to cite any case applying Section 4617(j)(3) to a lis pendens. Instead, Defendants retreat to an inapplicable FDIC statute. (ECF No. 44 at 9-10.)

Defendants' "merits" contentions will ultimately fail even if they are presented in the context of a live controversy.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**B.  There is No Basis to Grant Injunctive Relief to Defendants.**

*1.  Defendants have no counterclaim on which they can obtain injunctive relief.*

To qualify for a preliminary injunction, usually a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court does not have jurisdiction or authority to grant a preliminary injunction for claims that have never been pled. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). That's because "[a] court's equitable power lies only over the merits of the case or controversy before it." *Id.* Moreover, a preliminary injunction affords interim relief that may be eventually entered in a final judgment. *Id.* at 636. A party cannot obtain a judgment on claims never asserted so a preliminary injunction on phantom claims is also beyond the Court's reach. *See id.*

Consequently, a defendant without a counterclaim cannot obtain an injunction against a plaintiff. *U.S. v. Durango & Silverton Narrow Gauge R.R. Co.*, 2020 WL 9432882, at *1 (D. Colo. July 14, 2020) ("Relatedly, and more consequentially, a motion for preliminary injunctive relief presupposes a claim to which that request is tethered. Yet defendants have filed no counterclaim in this lawsuit …. 'Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief.'") (quoting *Powell v. Rios*, 241 Fed. Appx. 500, 505 n.4 (10th Cir. July 19, 2007)); *Profil Institut Fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, 2017 WL 1394089, at *1 (S.D. Cal. Feb. 28, 2017) (summarily denying motion for preliminary injunction because "Court lacks authority to grant the preliminary injunction" where defendant "has not filed a complaint, claim, [or] counterclaim").

Here, the Court lacks jurisdiction and equitable authority to grant an injunction to Defendants because they have no counterclaim upon which injunctive relief may be granted.[4] Defendants misquote this Court's decision in *Bank of New York Mellon v. Foothills at*

---

[4]     In a footnote, Defendants pontificate about potential counterclaims that might be available. (ECF No. 44 at 19 n.7.)  The Court can address any counterclaims when, and if, they are ever advanced.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

*MacDonald Ranch Master Ass'n*, 2019 WL 1529382, at *1 (D. Nev. Feb. 12, 2019) (Gordon, J.). Defendants contend the opinion holds that a defendant without an underlying claim may obtain an injunction. (ECF No. 44 at 20.) Defendants represent that this Court said, "there may be circumstances where a court is empowered to issue injunctive relief in favor of a defendant who has not asserted a counterclaim…." (*Id.* (quoting *Bank of New York Mellon*).) However, Defendants omit the critical first word of the sentence in the opinion—"While." It is clear, in context, from the Court's use of "while" and the Court's other reasoning *vacating* an injunction that the Court was expressing doubt about whether a counterclaim-less defendant could receive injunctive relief. The Court was entertaining a hypothetical. It hardly adopted Defendants' unequivocal view that an injunction is, in fact, available without a counterclaim.

Defendants also misconstrue *Dan D. Peterson Living Tr. Dated Apr. 2, 2009 v. Fyve LLC*, 2023 WL 7282295 (D. Ariz. Nov. 3, 2023). (ECF No. 44 at 20.) Defendants represent that *Dan D. Peterson* condones awarding an injunction to a defendant without a counterclaim when the relief is equivalent to a plaintiff's loss. *Id.* As with this Court in *Bank of New York Mellon*, the *Dan D. Peterson* court was skeptical of the possibility. It observed, "the Court has uncovered no case in which a court in the Ninth Circuit has granted a defendant's motion for preliminary injunction in the absence of a counterclaim." *Dan D. Peterson Living Tr.*, 2023 WL 7282295, at *2. It noted that the defendant's preliminary injunction "[c]ounter-[m]otion is in one sense moot, because the Court is already required to determine whether Plaintiff is likely to succeed on the merits of its claims by way of Plaintiff's Motion …" *Id.* at *3. *Dan D. Peterson* is not exactly a ringing endorsement of Defendants' theory, particularly when this Court indicated the opposite. In *Bank of New York Mellon*, this Court intimated that there can be no mirror-image preliminary injunction of a Plaintiff's loss when there is no underlying right to a permanent injunction; "[r]ather, the result would be that [plaintiff] did not succeed on its claims for affirmative relief." 2019 WL 1529382, at *1.

Defendants have no right to a preliminary injunction without a counterclaim and this Court lacks jurisdiction or equitable authority to grant one.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

### 2. Defendants have no likelihood of success because the injunction they seek is an unconstitutional prior restraint on speech and petitioning activity.

Even if the Court could grant an injunction for a nonexistent counterclaim, the requested relief will constitute an unconstitutional prior restraint. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur. Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. U.S.,* 509 U.S. 544, 550 (1993) (internal citation and quotations omitted). An "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418 (1971) (citing *Near v. Minnesota*, 283 U.S. 697 (1931)). Any prior restraint comes with a heavy presumption of unconstitutionality and the party seeking the restraint carries a heavy burden. *Id.* at 419.

Defendants seek to enjoin "Plaintiffs, their officers and agents, and any persons in active concert or participation with them from recording additional lis pendens against any properties on the basis of this action…." (ECF No. 44 at 1, 3, 25.)[5] However, it is well-accepted that recording a lis pendens with local county recorders' offices is a form of protected communicative and petitioning activity. *See Roman James Design Build, Inc. v. Monarch,* 2023 WL 142773, at *4 (Cal. Ct. App. Jan. 10, 2023) ("It is well established the recording of a lis pendens is protected activity under [California's Anti-SLAPP statute]") (citing *La Jolla Group II v. Bruce*, 211 Cal. App. 4th 461, 471 (2012) ("Unquestionably, the recording of the lis pendens constituted

---

[5]    Defendants also demand a preliminary injunction enjoining the same individuals and entities "from otherwise interfering with the disposition of any properties as to which any party is on notice that Fannie Mae and Freddie Mac holds an interest." (*Id.*)   This request is too impermissibly vague to be enforced. Federal Rule of Civil Procedure 65(d)(1)(C) requires that the injunction "describe in reasonable detail…the act or acts restrained or required." Phrases like "interfering with the disposition of any properties" are not specific enough. Neither Plaintiffs nor the Court can know what this means. Given the phrase's overbreadth, it intolerably covers constitutional and lawful actions. *See Alexander*, 509 U.S. at 555.

Moreover, any injunction cannot extend beyond the Plaintiffs and their officers, agents, servants, employee, attorneys, or other persons who are in active concert or participation with them. Fed. R. Civ. P. 65(d)(2). The injunction cannot extend to entirely separate corporate entities that may own different properties.

a written statement made in connection with issues under consideration in a judicial proceeding")); *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1050 (2009) (The filing of a notice of lis pendens "falls squarely within" the definition of an """"act in furtherance of a person's right of petition"""""))); *Serafine v. Blunt*, 466 S.W.3d 352, 359-60 (Tex. App. 2015) (holding that lawsuit and related lis pendens filing was as "exercise of the right to petition" because these were "communication[s] in or pertaining to ... a judicial proceeding," namely the suit itself); *id.* at 377-90 (Pemberton, J., concurring) (agreeing with that conclusion under analysis of "exercise of right to petition" definition informed by background First Amendment principles); *Smith v. Arrington*, 2021 WL 476339, at *4 (Tex. App. Feb. 9, 2021) ("Smith filed a lis pendens—a communication related to a judicial proceeding. Smith's filing implicated the exercise of her right to petition."); *Mize v. Westbrook Const. Co. of Oxford*, LLC, 146 So. 3d 344, 349-50 (Miss. 2014) (all citizens have the constitutional right to petition courts, which includes the privilege to file a lis pendens notice).

In addition to being a direct petition to a local government county recorder, a lis pendens "in effect .. is a re-publication of the [litigation] proceedings, the publication of the pleadings is clothed with absolute privilege thus the re-publication thereof by recording a notice of lis pendens is similarly privileged." *Woodcourt II Ltd. v. McDonald Co.*, 173 Cal. Rptr. 836, 839 (Ct. App. 1981); *Zamarello v. Yale*, 514 P.2d 228, 230 (Alaska 1973) (similar); *Fed. Nat'l Mortg. Ass'n v. DuBoi*s, 2019 WL 13259732, at *4 (D. N.J. Aug. 8, 2019) (similar).

The Nevada Supreme Court has likewise held that recording lis pendens is a communication made during a judicial proceeding and absolutely privileged so they cannot be the subject of "*any* civil litigation based on [them]." *Bullivant Houser Bailey PC v. Eighth Jud. Dist. Ct.*, 381 P.3d 597, at *3 (Nev. 2012) (unpublished) (citing *See Ringier America v. Enviro-Technics, Ltd.,* 673 N.E.2d 444, 447 (Ill. App. Ct. 1996) ("[N]early every jurisdiction to consider the question has extended the absolute privilege accorded statements made in the course of litigation to include the filing and/or recording of a *lis pendens* notice.")); *see also Olszewski v. Scripps Health*, 69 P.3d 927, 949 (Cal. 2003) ("Our courts have extended the protections of the litigation privilege to the recordation of a notice of lis pendens "); *Sheets v. Superior Ct.*,

149 Cal. Rptr. 912, 914 (Ct. App. 1978) ("A notice of lis pendens is absolutely privileged.");

*Prappas v. Meyerland Cmty. Imp. Ass'n*, 795 S.W.2d 794, 795-800 (Tex. App. 1990) (holding there is an absolute privilege for recording a lis pendens even when party alleges the lis pendens wrongfully falls outside the circumstances for which a lis pendens may be recorded).

Defendants' proposed injunction barring Plaintiffs from recording lis pendens is a violation of the First Amendment and an unconstitutional prior restraint. It will unlawfully prohibit Plaintiffs and those associated with them from recording documents with government county recorders and from publishing to the public that there is a pending judicial proceeding related to real property title and possession. The injunction will not only chill protected speech; it will silence First Amendment petitioning and privileged activities. Injunctions of this type are presumptively unconstitutional and there are no extraordinary reasons to tolerate *another* constitutional infringement by Defendants here.

Even if a lis pendens is incorrectly recorded or "not appropriate under the circumstances, it is not an illegal act forbidden by law." *Park 100 Inv. Grp. II, LLC v. Ryan*, 103 Cal. Rptr. 3d 218, 225 (Cal. Ct. App. 2009) (citing *Manhattan Loft, LLC*, 173 Cal. App. 4th at 1040-50 (defendants' conduct in filing lis pendens was protected activity even if the lis pendens was invalid, as it did not refer to a pending lawsuit, but referred to arbitration proceedings; thus, even if a lis pendens was not properly filed, the defendants met their burden of showing that the act of filing the lis pendens was protected activity)); *see also Watkins v. D'Orio*, 2022 WL 4231779, at *4 (Cal. Ct. App. Sept. 14, 2022) (failure to file lis pendens immediately upon filing suit did not render the lis pendens void or illegal). And in light of the serious constitutional questions raised here—plus *CFPB*'s remaining concern about uncapped standing appropriations without congressional involvement—it certainly cannot be said that Plaintiffs' litigation is objectively baseless or that that every reasonable litigant would expect to fail on the merits so that the First Amendment may not apply.  No lis pendens was filed with an improper or illegal objective. (Decl. E. Haddad at ¶ 7, Ex. 1); *see Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993); *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 530-31 (2002).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Therefore, Defendants do not have a likelihood of success on a mystery counterclaim because an injunction preventing the recording of a lis pendens in connection with this litigation will be an unconstitutional prior restraint on petitioning and speech activities in violation of the First Amendment.

### 3. The Court should defer addressing the likelihood of success on the merits until plaintiffs submit the proposed amended complaint.

If Defendants overcome the illegal nature of their requested preliminary injunction, the Court should defer any consideration of the likelihood of success on the merits until Plaintiffs file their forthcoming amended complaint. *See Shige Takiguchi v. MRI Int'l, Inc.*, 2014 WL 1796773, at *3 (D. Nev. May 6, 2014) ("The court defers consideration of the plaintiffs' motion for preliminary injunction (# 133) until the filing of the third amended complaint and any responses thereto."); *see also Toromanova* 2020 WL 2308223, at *4 ("I previously denied Rushmore's motion to expunge without prejudice because I had not dismissed all of Toromanova's claims and had given her leave to amend, so the lawsuit remained pending.").

As stated in the June 21, 2024 Joint Status Report, the proposed class representatives intend to file an amended pleading to narrow and refocus the issues after the Supreme Court's *CFPB* decision. (ECF No. 45.) In *CFPB*, the Supreme Court emphasized that early English "[s]tatutes grant[ing] money often stated that the Crown could spend 'any Sum not exceeding' a particular amount." *CFPB*, 601 U.S. at 429 (quotations omitted). The Court relied on American colonial practice where "[s]ome appropriations required expenditure of a particular amount, while others allowed the recipient of the appropriated money *to spend up to a cap*." *Id*. at 431 (emphasis added). "Congress' first annual appropriations law, for instance, divided Government expenditures into four broad categories and *authorized disbursements up to certain amounts for these purposes*." *Id*. at 432 (emphasis added). "The appropriation of 'sums not exceeding' a specified amount did not by itself mandate that the Executive spend that amount; as was the case in England, such appropriations instead provided the Executive discretion over how much to spend *up to a cap*." *Id*. (emphasis added).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

The Supreme Court upheld the Consumer Financial Protection Bureau's funding mechanism because Congress imposed a cap or limit on how much the agency could spend and provided the purposes for the funds. The Court held that the funding structure fit within the definition of "appropriation" because "[t]he statute authorizes the Bureau to draw public funds from a particular source … *in an amount not exceeding an inflation-adjusted cap*." *Id*. at 435 (emphasis added). The Court continually highlighted the significance of the cap for the agency's constitutionality. *Id*. ("In design, the Bureau's authorization to draw an amount that the Director deems reasonably necessary to carry out the agency's responsibilities, *subject to a cap*, is similar to the First Congress' lump-sum appropriations") (emphasis added); *id*. at 436 ("Congress determined the amount for the Bureau's annual funding *by imposing a statutory cap* … The only sense in which the Bureau decides its own funding, then, is by exercising its discretion to draw less than the *statutory cap*.") (emphases added).

Unlike the Consumer Financial Protection Bureau, Congress did not impose a cap or ceiling on how much FHFA can spend. Rather, Congress forever punted all future appropriation decisions to the FHFA itself. Its Director has the infinite ability to raise and spend as much as she wants under the impermissibly amorphous "reasonableness" concept. 12 U.S.C. § 4516(a) ("The Director shall establish and collect from the regulated entities annual assessments in an amount not exceeding the amount sufficient to provide for reasonable costs (including administrative costs) and expenses of the Agency"). Thus, the FHFA's capless funding and spending remains constitutionally unsound after *CFPB*.

Yet the Court need not, and should not, weigh-in on these issues in this posture. The Court should defer until Plaintiffs clean up and reorientate the pleadings after *CFPB*. No matter the Court's eventual view of the merits, the aggrieved party is likely to appeal. The parties and the courts deserve the cleanest record possible to review these grave constitutional issues.

### 4.    *Defendants cannot show the necessary irreparable harm.*

Defendants claim that Section 4617(b)(16) and (17) absolve them of the obligation to prove irreparable harm for a preliminary injunction. (ECF No. 44 at 21-22.) But statutory acts purporting to intrude on the Judiciary's inherent equitable powers violate the separation of powers

and constitute an impermissible intrusion on the Judiciary's equitable authority. *See S & S Sales Corp. v. Marvin Lumber & Cedar Co*., 435 F. Supp. 2d 879, 884–85 (E.D. Wis. 2006) (suggesting that a statutory irrebuttable presumption of irreparable harm "would constitute an infringement by the legislature of the judicial power" and be "arguably unconstitutional"). The statutes also violate Plaintiffs' due process rights which require Defendants to prove their entitlement to injunctive relief. *Id*. at 885-86.

"The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles." *Id*. at 313. Unless a statute limits the federal courts' equitable *jurisdiction*, "a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Id*. (discussing *Brown v. Swann*, 35 U.S. 497, 503 (1836)); *see also Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.,* 736 F.3d 1239, 1249 (9th Cir. 2013) ("*Winter*'s admonition that irreparable harm must be shown to be likely in the absence of a preliminary injunction also forecloses the presumption of irreparable harm here.").

Federal Rule of Civil Procedure 65(e) confirms this result.  Subsection (e) states that Rule 65 does not modify injunctions "affecting employer and employee," or injunctions under 28 U.S.C. § 2361 and 28 U.S.C. § 2284. Section 4617(b)(16) and (17) are not excluded from Rule 65. Thus, by negative implication, Rule 65 *does* modify Section 4617(b)(16) and (17). *Schneider v. Chertoff*, 450 F.3d 944, 954 (9th Cir. 2006) ("it is a well-established maxim of statutory interpretation that the expression of one thing is the exclusion of another."). Because Section 4617 does not restrict the federal courts' equitable jurisdiction or automatically mandate an injunction for all conduct that might fall within its purview despite Rule 65, the traditional equitable principles govern and irreparable harm is required. *Weinberger*, 456 U.S. at 320. Otherwise, Section 4617(b)(16) and (17) are constitutionally infirm.

Implicitly recognizing they are on shaky constitutional ground (again), Defendants eventually analyze whether they will suffer irreparable harm. (ECF No. 44 at 22.)  But their

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

earlier concession that "monetary injury clearly exists" negates any irreparable harm. (*Id*. at 21.) Defendants assert "the lis pendens has diminished Fannie Mae's ability to dispose of the Reber Drive Property at its fair market value." (*Id*.) Setting aside that Defendants present no evidence to support this assertion, they concede there is "compensable injury to Fannie Mae's conservatorship estate." (*Id*.)  Since Defendants' injury (if any) is financially compensable, there is no irreparable harm. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("Irreparable harm is harm for which there is no adequate legal remedy, such as an award for damages.) (quotations omitted).

The rest of Defendants' irreparable harm arguments are nothing more than nonspecific platitudes about how a lis pendens supposedly interferes with FHFA's preservation, foreclosure, or liquidation of assets. (*Id*. at 22.) But Defendants do not explain or provide evidence of any interference. *See Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc*., 736 F.3d 1239, 1250 (9th Cir. 2013) (stating that irreparable harm must not be "grounded in platitudes rather than evidence"). Indeed, they could not. Just look at the Reber Drive Property itself. Defendants were able to foreclose on the property despite the lis pendens. (ECF No. 44 at 18.) It is laughable to suggest that the mere notice of litigation through a lis pendens threatens "the impending total collapse of the housing market and of the Nation's economy along with it," (*id*. at 22), especially when FHFA itself controls *trillions* in assets. Defendants have presented no evidence of *likely*, non-speculative irreparable harm. *See Herb Reed Enterprises*, 736 F.3d at 1249-51 (9th Cir. 2013) (holding that a plaintiff seeking a preliminary injunction must establish a likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm).

### 5.     *Plaintiffs will suffer irreparable harm and the balance of the hardships tips in their favor.*

Wrongfully equating Mr. Haddad with the Plaintiffs themselves, Defendants assert that the Plaintiffs will not suffer irreparable harm because the properties might be held for investment purposes. (ECF No. 44 at 23-24.) But "[t]he Nevada Supreme Court has viewed the loss of real property as irreparable harm even where the real property's putative owner is a corporate entity, and where the real property is to be used for a commercial purpose." *Invs. v. Bank of Am., NA*,

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

585 F. App'x 742,743 (9th Cir. 2014) (citing *Thirteen S. Ltd. v. Summit Vill., Inc.*, 109 Nev. 1218, 866 P.2d 257, 259 (1993) (per curiam); *Stoltz v. Grimm*, 100 Nev. 529, 689 P.2d 927, 930 (1984) (per curiam)). Under Nevada law, real property is unique and irreplaceable no matter its uses. *See id.*; *Dixon v. Thatcher*, 742 P.2d 1029, 1030 (Nev. 1987). Plaintiffs face the risk of losing real property rights or being embroiled in expanding litigation over title and possession if they are enjoined from notifying the public about ongoing real property litigation with a lis pendens.

Defendants bemoan that Plaintiffs have "paid nothing toward the long-defaulted loans while continuing to collect market-rate rental income." (ECF No. at 44 at 23.) Of course, Defendants ignore that Plaintiffs are not the underlying borrowers and have no contractual obligation to pay anything to them. Defendants also do not explain why *they* did not purchase the property "for pennies on the dollar," waited *years* to foreclose, and virtually *never* pursue the underlying borrowers for the amounts owed. Defendants are complicit in any complaints about public injury or delays. The unseemly truth is that Defendants' maneuvering manipulates the Nation's housing market and suppresses national foreclosure statistics to score political points. There is little question that housing would be more available and more affordable without the FHFA's market manipulation and if FHFA acted within the confines of the Constitution. Enjoining Plaintiffs (or anyone) from recording notices about disputes over real property will cause irreparable harm.

### 6.    *The public interest does not favor an injunction.*

An injunction prohibiting a lis pendens will injure the public interest. "'The doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing.'" *Toromanova* 2020 WL 2308223, at *2 (quoting *Weddell v. H2O, Inc*., 271 P.3d 743, 751 (Nev. 2012)). A lis pendens ensures that any subsequent purchaser is aware that they might acquire an interest in the property that is subject to a potential judgment. *Orange Cnty. v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 825 (9th Cir. 1995). "As lis pendens provides constructive notice of litigation, any judgment later obtained in that litigation relates back to filing of the lis pendens." 51 Am. Jur. 2d *Lis Pendens* § 1 (May 2024 Update) (citing *In re Liu*, 611 B.R. 864 (B.A.P. 9th Cir. 2020)).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

A court order barring the proposed class representatives from filing a lis pendens will leave prospective purchasers in the dark about this litigation and the case's potential impact on title to real property. The public will be unaware that this litigation may restrict or unwind their newly acquired property rights. Silencing the Plaintiffs' First Amendment petitioning rights and sweeping this case under the rug will the injure the public's right to know about the property interests at stake in this case. *See Energistica, S.A. v. Mercury Petroleum, Inc*., No. 1:08CV-60-R, 2008 WL 3271986, at *5 (W.D. Ky. Aug. 7, 2008) ("This Court finds that the public interest may suffer if the lis pendens were not enforced as the lis pendens serves to provide public notice that litigation is pending concerning specific real estate.").

The knowledge and rights of future third-party purchasers should outweigh any negligible harm to a behemoth federal agency with no interest in acting unconstitutionally. *United Farm Workers v. United States Dep't of Lab*., 509 F. Supp. 3d 1225, 1253 (E.D. Cal. 2020) ("There is generally no public interest in the perpetuation of unlawful agency action."). The public interest weighs against the injunction.

## C.     The Court Should Require a Substantial Bond.

A substantial bond is required if the Court orders any expungement of a lis pendens or prohibits the proposed class representatives and potential class members from recording lis pendens. NRS 14.015(6) states:

> If the court finds that the party who recorded the notice of pendency of the action has established the matters required by subsection 2, the party opposing the notice may request the court to determine whether a bond in an amount to be determined by the court would provide adequate security for any damages which the party who recorded the notice might incur if the notice were so cancelled and the party opposing the notice did not prevail in the action

The bond necessary to provide adequate security for wrongfully precluding the recordation of lis pendens likely totals in the millions given the value of the properties, the number of class members involved, class members' investments, and the cost of litigation that cannot be minimized or avoided with recording lis pendens. The Court should hold an evidentiary hearing to determine the appropriate security amount. No expungement or prevention should occur until the bond is posted. NRS 14.015(6) ("If the court determines that a bond would provide

adequate security, the party opposing the notice may post a bond …. The court shall then order the cancellation of the notice of pendency").

**IV.    CONCLUSION**

For these reasons, the Court should deny Defendant Federal Housing Finance Agency's Motion to Expunge Lis Pendens and For Injunctive Relief.

Dated this 8th day of July, 2024.

PISANELLI BICE PLLC

By:    _/s/ Jordan T. Smith_
        Jordan T. Smith, Esq., #12097
        Brianna Smith, Esq., #11795
        400 South 7th Street, Suite 300
        Las Vegas, Nevada 89101

*Attorneys for Plaintiffs*